**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| TQP DEVELOPMENT, LLC, | Civil Action No. 2:11-cv-248 |
| Plaintiff, | |
| v. | |
| 1-800-FLOWERS.COM, INC. *et al.*, | Judge: J. Rodney Gilstrap |
| Defendants. | Magistrate Judge: Roy S. Payne |

### DEFENDANTS' MOTION TO COMPEL DISCOVERY

Defendants HSN, Inc. and Newegg Inc. (collectively "Defendants") move the Court pursuant to Federal Rule of Civil Procedure 37 to compel Plaintiff, TQP Development, LLC ("TQP") to adequately respond to Defendants' First Set of Common Interrogatories served October 30, 2012 (the "Interrogatories").

TQP's current responses to Defendants' Interrogatories are so deficient that Defendants are still in the dark about which features of the RC4 encryption algorithm in connection with Defendants' use of SSL and/or TLS encryption protocols allegedly infringe the claims of TQP's patent.  TQP instead incorrectly argues that these interrogatories are "premature" and would be more appropriately answered after "much or all of the other discovery has been completed." (Supp. Resp. to First Set of Interrogs. 4-8, Exh. A).

Defendants have waited long enough for this necessary information.  Indeed, TQP litigated the patent-at-issue – U.S. Patent No. 5,412,730 (the "'730 Patent") – against hundreds of defendants over a period of more than four years.  Each of these defendants has been accused of infringement through its use of industry standard SSL and/or TLS encryption protocols utilizing the RC4 encryption algorithm.  One of those defendants, TD Ameritrade, did not settle

until virtually the eve of trial and allowed TQP a full round of fact and expert discovery to investigate its infringement allegations against the RC4 encryption algorithm and SSL/TLS protocols.  (*See TQP Development, LLC v. Merrill Lynch & Co., Inc. et al.,* No. 2:08-cv-00471-WCB (E.D. Texas) (the "TDA Case")).

Moreover, TQP was obligated to conduct a pre-litigation investigation.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.").  Now, after four years and full fact and expert discovery in the TDA Case, TQP still refuses to identify a single component of the RC4 encryption algorithm or the SSL and TLS protocols used by Defendants that allegedly corresponds to the claimed features of the '730 Patent.  Without such critical information, the Defendants cannot mount a defense against TQP's infringement allegations, including obtaining necessary information for the upcoming Markman hearing.

TQP also refuses to respond to other Interrogatories on the basis of privilege, without any legitimate explanation or support.  For example, in response to Interrogatory 11, TQP simply contends that all communications between TQP and IP Navigation Group, LLC (IPNav) are privileged under either the attorney-client and/or common interest privilege.  But IPNav is not a party to this lawsuit and is not TQP's attorney.  Rather, IPNav was retained by TQP "to provide patent monetization services, including acting as TQP's representative in licensing and settlement matters," not as TQP's counsel (Resp. to Interrog. 11, Exh. B).  Moreover, TQP's privilege log fails to identify a single communication between TQP and IPNav.

As TQP itself stated:

> It is only through discovery that the parties can fully disclose their
> claims and defenses, and obtain the evidence necessary to evaluate
> the strength of those claims and reach resolution through
> settlement.  (TQP's Response in Opposition to Motion to Stay, p. 6
> (Dkt. No. 93)).

TQP now refuses to do just that – adequately respond to Defendants' Interrogatories so

Defendants can evaluate the strength of TQP's positions to build their defense.

## I.     Defendants are Entitled to Discovery on TQP's Infringement Allegations

This Court "adheres to, as the Federal Rules of Civil Procedure contemplate, a policy of

liberal discovery." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D.

Tex. 2004).  "[T]he Court will not tolerate gamesmanship that attempts to conceal or delay the

production of discoverable items."  *Id.*

Interrogatory No. 4 requests TQP to "state … the identity of the specific element of such

Accused Instrumentality that You contend satisfies the claim limitation 'seed value,' as required

by the Asserted Claims."  (Interrog. 4, Exh. C).  Interrogatories 5-8 request a similar clarification

for other elements of the '730 Patent claims.  TQP refuses to provide this basic information to

Defendants because such requests are allegedly "premature."  TQP is wrong.

TQP served infringement contentions on March 30, 2012 (the "Contentions"), alleging

that each of the Defendants infringe the '730 Patent because the Defendants' websites implement

the industry-standard SSL and/or TLS protocols utilizing the RC4 encryption algorithm.  The

Contentions did not present any defendant-specific arguments other than including various

screenshots of the websites allegedly showing the use of the accused standards in their customary

usage.  In describing how the Defendants infringed by using the SSL and/or TLS protocols with

the RC4 algorithm, TQP cited to the exact same publicly available journal articles for hundreds

of defendants.  (Infringement Contentions at pp. 376-381, and 529-534, Exh. D).  Put simply,

TQP's infringement allegations are virtually identical for all defendants – according to TQP,

simply using the industry-standard SSL and/or TLS encryption protocols in connection with the RC4 encryption algorithm causes infringement of the '730 Patent.

While TQP is expected to contend that it is not the use of SSL/TLS and the RC4 encryption algorithm *per se* that infringes, but the specific use within each defendant's system, TQP's Contentions belie any such distinction.  TQP has not identified a single defendant-specific implementation of these encryption standards that would demonstrate a unique manner of infringement.

TQP now argues that it "does not yet have the information necessary to state with any further specificity how Newegg's and HSN's systems' use of SSL/TLS and RC4 infringe other than as is set forth in the infringement contentions."  (January 30, 2013 letter Kroeger to Muffo, Exh. E).  After four years of litigating the '730 Patent and full fact and expert discovery in the TDA Case, and its requisite pre-litigation investigation in this case, how can TQP contend it is unable to identify a single component of SSL/TLS or RC4 that allegedly corresponds to any element of the '730 Patent?

TQP also incorrectly argues that further details of its infringement theory are subject to expert discovery.  (Supp. Resp. to First Set of Interrogs. 4-8, Exh. A).  While certain details may emerge from expert discovery, the Defendants are not requesting an expert report ahead of the Court's schedule.  Defendants are, instead, requesting the *factual* basis supporting TQP's contention that certain components of the SSL and TLS encryption protocols and the RC4 encryption algorithm allegedly correspond to the claimed elements of the '730 Patent.  After four years and full discovery in the TDA Case, TQP should have that factual support readily available.

TQP's vague Contentions do not provide the requested information with sufficient specificity.  In particular, TQP's Contentions fail to identify the components of the SSL/TLS protocols or the RC4 encryption algorithm that allegedly correspond to the '730 Patent elements requested by the Interrogatories.  Instead, TQP's Contentions merely include block quotes that simply state the general operation of SSL/TLS and RC4, without identifying how any of it meets specific claim limitations or otherwise causes infringement of the '730 Patent.  (Infringement Contentions at pp. 376-381, and 529-534, Exh. D).  *EON Corp. IP Holdings, LLC v. Sensus USA Inc., et al.*, No. 6:09-cv-116, 2010 WL 346218 at *3 (E.D. Tex. January 21, 2010) ("[t]he block quote excerpts describe the operation of the referenced instrumentalities and their features, but EON does not otherwise explain its theories of how the accused instrumentalities satisfy the asserted claim elements.").

For example, with respect to RC4's use of an alleged "seed value" to generate a sequence of "pseudo-random key values," TQP has alleged that "[t]he input K in phase one of the above-described [RC4] algorithm is described in SSL documentation as an encryption key and is used as a seed to generate a pseudo-random sequence of bytes."  (Infringement Contentions at 388 and 541, Exh. F).  Yet nowhere does TQP identify what that seed is.  TQP has cited only generally to large block quotes of SSL/TLS literature like the following:

> "The master secret is hashed into a sequence of secure bytes, which are assigned to the MAC secrets and keys required by the current connection state (see Appendix A.6). CipherSpecs require a client write MAC secret, a server write MAC secret, a client write key, and a server write key, each of which is generated from the master secret in that order
>
> The general goal of the [SSL/TLS] key exchange process is to create a pre_master_secret known to the communicating parties and not to attackers. The pre_master_secret will be used to generate the master_secret (see Section 8.1). The master_secret is required to generate the finished messages, encryption keys, and MAC secrets (see Sections 7.4.8, 7.4.9, and 6.3). By sending a correct

finished message, parties thus prove that they know the correct pre_master_secret."  (Infringement Contentions at 382 and 535, Exh. G).

It is impossible for Defendants to determine what TQP alleges to be the seed value based on these disclosures.

More is required for Defendants to analyze TQP's infringement theory.  *S.S. White Burs, Inc. v. Neo-Flo, Inc.*, 2003 WL 21250553, at *2 (E.D. Pa. May 2, 2003) ("[B]ecause the essence of a patent infringement suit is the comparison between the elements of two products, this element-by-element disclosure is necessary to inform [the Defendants] of the exact nature of Plaintiff's claims."); *AM Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F.Supp.2d 558, 560 (E.D. Tex. 2005) ("To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense.").

Defendants ask the court to agree with TQP on one issue: "[i]t is only through discovery that the parties can fully disclose their claims and defenses, and obtain the evidence necessary to evaluate the strength of those claims and reach resolution through settlement."  (TQP's Response in Opposition to Motion to Stay, Dkt. 93, p. 6).  Yet, TQP now refuses to provide the discovery it championed, and Defendants are left guessing as to how the SSL and/or TLS encryption protocols or the RC4 algorithm allegedly cause infringement of the '730 Patent.

II.     **Communications between TQP and IPNav are not Privileged**

Interrogatory 11 requests TQP to

Explain in detail, and identify all documents and things relating to, IP Navigation Group, LLC's involvement in the case styled TQP Development, LLC v. 1-800-Flowers.com, et al., case no. 2:11-cv-00248, including, but not limited to, <u>all communications between IP Navigation Group, LLC and TQP Development, LLC</u> relating to the pre-filing investigation, filing, and prosecution of the case styled TQP Development, LLC v. 1-800-Flowers.com, et al., case no. 2:11-cv-00248. (Emphasis added).

TQP summarily responded that all communications between TQP and IPNav are privileged under the attorney-client and/or common interest privileges. (Resp. to Interrog. 11, Exh. B).  TQP is wrong for several reasons.

The attorney-client privilege applies only to communications made in the context of an attorney-client relationship "for the primary purpose of securing either a legal opinion or legal services." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).  The party claiming the privilege has the burden of proving the communications are privileged.  *U.S. v. Kelly*, 569 F.2d 928, 938 (5th Cir.1978).  If an attorney is functioning in a capacity other than a lawyer – such as a consultant or investigator – the attorney-client privilege does not attach.  *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 474-75 (N.D. Tex. 2004).

None of the communications between TQP and IPNav are protected from discovery under the attorney-client privilege because none of those communications were between an attorney and their client "for the primary purpose of securing either a legal opinion or legal services." *Robinson*, 121 F.3d at 974.  IPNav is not TQP's law firm and does not provide any legal services, but, as explained by TQP, was retained for "licensing and settlement matters." (Resp. to Interrog. 11, Exh. B).  Although some members of IPNav are believed to be lawyers, more is required to shield relevant documents from discovery.  *Navigant Consulting.* 220 F.R.D. at 474-75 ("The documents are not privileged merely because they were prepared by or sent to

an attorney."). TQP is improperly attempting to conceal discoverable correspondence simply because presumably some members of its licensing agent happen to have law degrees. It is also telling that TQP's privilege log fails to identify any communications between TQP and IPNav.

TQP also incorrectly contends that all communications between TQP and IPNav are immune from discovery under the common interest privilege. The common interest privilege is not an independent privilege, but rather an extension of an existing privilege. *Ferko v. National Ass'n For Stock Car Auto Racing, Inc.*, 219 F.R.D. 396 (E.D. Tex. November 20, 2003) ("Despite its name, the common interest privilege is neither common nor a privilege."). Generally, the attorney-client privilege is waived when an attorney divulges privileged information to a third party. *See United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir.1976). The common interest privilege, however, "extends a recognized privilege, commonly the attorney-client or work product privileges, to cover those communications." *Power Mosfet Techs. v. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. October 30, 2000).

Put simply, the common interest privilege is "an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party." *Katz v. AT&T Corp.*, 191 F.R.D. 433, 436 (E.D.Pa. February 2, 2000) (citations omitted). The privilege is generally narrowly construed because it is "an obstacle to truthseeking" – which is precisely how TQP is using the privilege here. *Mondis Technology, Ltd. v. LG Electronics, Inc.*, Case Nos. 2:07–CV–565–TJW–CE, 2:08–CV–478–TJW, 2011 WL 1714304 at *4 (E.D. Tex. May 4, 2011).

TQP cannot invoke the common interest privilege to extend the attorney-client privilege because the attorney-client privilege does not exist to begin with. As discussed above, the communications between TQP and IPNav are between executives of these companies, not

between a client seeking legal advice from his lawyer.  Since communications between TQP and IPNav are not attorney/client privileged, such communications necessarily are not protected under the common interest privilege.

Yet, even if the communications listed in TQP's privilege log are attorney-client or otherwise privileged, the common interest privilege is not applicable because IPNav is not a party to this lawsuit.  "[T]he two types of communications protected by the common interest doctrine are (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel."  *Ferko*, 219 F.R.D. 396 at 401 (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)) (internal citations omitted).  IPNav does not fall into either of the above categories because IPNav has never been a potential or existing party to this lawsuit.

Defendants served narrowly tailored discovery seeking information relating to TQP's pre-litigation investigation and the involvement of its non-party licensing arm, IPNav.  In response, TQP hid behind a phantom privilege claim that is neither supported by law nor listed in its privilege log.  TQP cannot possibly contend that every single communication with IPNav was sent "for the primary purpose of securing either a legal opinion or legal services." *Robinson*, 121 F.3d at  974.  Indeed, TQP admitted IPNav was retained only for "licensing and settlement matters" and not for legal counseling.

III.   **Conclusion**

For the reasons set forth herein, Defendants' ask the Court to compel TQP to adequately respond to the interrogatories discussed above, and to produce all communications between TQP and IPNav relating to the pre-filing investigation, filing, and prosecution of this case.

Dated: February 12, 2013

Respectfully submitted,

/s/Patrick T. Muffo
Joseph R. Lanser
Patrick T. Muffo
Michael R. Levinson
Matthew A. Werber
SEYFARTH SHAW LLP
131 S. Dearborn Street
Suite 2400
Chicago, Illinois 60603
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000

/s/E. Glenn Thames, Jr.
E. Glenn Thames, Jr.
Texas State Bar No. 00785097
POTTER MINTON, PC
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311
Email: glennthames@potterminton.com

*Counsel for HSN, Inc.*

/s/Anthony W. Brooks
Kent E. Baldauf, Jr.
Anthony W. Brooks
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815
Facsimile (412) 471-4094

/s/Trey Yarbrough
Trey Yarbrough
Debra E. Gunter
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Telephone:     (903) 595-3111
Facsimile:     (903) 595-0191

*Counsel for Newegg Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Patrick T. Muffo, an attorney, certify that I caused the foregoing to be filed electronically with the Clerk of the Court for the Eastern District of Texas using the Court's Electronic Case Filing System, which will send notification to the registered participants of the ECF System as listed in the Court's Notice of Electronic Filing, on February 12, 2013.

/s/Patrick T. Muffo           
Patrick T. Muffo
131 South Dearborn Street
Suite 2400
Chicago, Illinois  60603
(312) 469-5000 – Telephone
(312) 460-7000 – Facsimile
e-mail:  pmuffo@seyfarth.com

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Defendants HSN, Inc. and Newegg, Inc. conferred with Plaintiffs' counsel on

February 12, 2013 regarding this Motion, but were unable to resolve this matter.


/s/ Patrick T. Muffo
Patrick T. Muffo