UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TQP DEVELOPMENT, LLC<br><br>          Plaintiff,<br><br>v.<br><br>1-800 FLOWERS.COM, INC. *et al.*,<br><br>          Defendant. | Civil Action No. 2:11-cv-248-JRG-RSP<br><br>CONSOLIDATED<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF TQP DEVELOPMENT, LLC'S OPPOSITION TO DEFENDANTS
HSN, INC.'S AND NEWEGG INC.'S MOTION TO COMPEL DISCOVERY**

## Table of Contents

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

    A. Summary of the Patent-In-Suit. ................................................................ 2

    B. Facts Relevant to Interrogatories Nos. 4-8. ............................................... 3

        1. TQP Served Newegg and HSN With Its Infringement Contentions Almost One Year Ago and Received No Objections Concerning Their Contents. .......................................... 3

        2. The Interrogatories at Issue Seek Specific Information About Defendants' Accused Websites For Which TQP Has Not Yet Completed Discovery. ............................................. 3

        3. Defendants' Refusal to Provide the Information Necessary To Answer the Interrogatories. ............................................................. 5

    C. Facts Relevant to Interrogatory No. 11 ...................................................... 5

        1. The Interrogatory and TQP's Response. ....................................... 5

        2. TQP's Relationship with IPNav. .................................................... 6

III. DEFENDANTS' MOTION SHOULD BE DENIED .................................... 6

    A. Legal Standards. ........................................................................................ 6

    B. Interrogatories 4-8 Seek TQP's Expert Infringement Analysis In Advance of the Schedule Set by the Court and Prior to the Completion of Discovery. ......................................................................... 7

IV. HSN AND NEWEGG ARE NOT ENTITLED TO COMMUNICATIONS BETWEEN TQP AND IPNAV AS REQUESTED BY INTERROGATORY NO 11 ......................................... 10

V. CONCLUSION ................................................................................................ 12

## Table of Authorities
Page

**Cases**

*Corwin v. Marney Orton Invs.*
  843 F.2d 194 (5th Cir. 1988) ........................................................................................... 7

Crawford-El v. Britton
  523 U.S. 574 (1998) ......................................................................................................... 7

Export Worldwide, Ltd. v. Knight
  241 F.R.D. 259 (W.D. Tex. 2006) ................................................................................. 6, 7

Ferko v. Nascar
  219 F.R.D. 396 (E.D. Tex. 2003) .................................................................................... 10

Gauthier v. Union Pacific R.R. Co.
  2008 U.S. Dist. LEXIS 47199, 2008 WL 247016 (E.D. Tex. June 18, 2008) ................... 7

In re Regents of the Univ. of Cal.
  101 F.3d 1386 (Fed. Cir. 1996) ...................................................................................... 11

Leader Techs., Inc. v. Facebook, Inc.
  719 F. Supp. 2d 373 (D. Del. 2010) ............................................................................... 11

Power Mosfet Techs v. Siemens AG
  206 F.R.D. 422 (E.D. Tex. October 30, 2000) ............................................................... 10

Spiegelberg Mfg., Inc. v. Hancock
  2007 U.S. Dist. LEXIS 88987, 2007 WL 4258246 (N.D. Tex. Dec. 3, 2007) ................... 7

Xerox Corp. v. Google Inc.
  801 F. Supp. 2d 293 (D. Del. 2011) ............................................................................... 11

**Statutes**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 7

Fed. R. Civ. P. 37 ..................................................................................................................... 6

**I.     INTRODUCTION**

The Motion to Compel filed by Defendants HSN, Inc. and Newegg Inc. (collectively "Defendants") seeks to compel TQP Development, LLC ("TQP") to: (1) answer interrogatories specifically identifying how each of Defendants' accused websites meet certain claim limitations well in advance of the time TQP is required to disclose this information; and (2) identify every communication between TQP and IP Navigation Group, LLC ("IPNav"), whom TQP has retained to provide patent monetizing services, including facilitating licensing and settlements. Neither request has merit.

First, as explained below, Defendants' motion is based on a complete misstatement of the interrogatories at issue. Defendants did not request that TQP state how, in general, the use of SSL/TLS and RC4 infringe the claims of the patent-in-suit. Instead, Defendants requested that TQP identify the "specific elements" of Defendants' systems that meet the various claim terms. TQP does not have access to the information needed to provide any further, more detailed information concerning how Defendants' systems infringe the patent-in-suit, as TQP has not yet finished discovery of Defendants on this issue. Defendants have not yet made themselves available for deposition (and, in fact, have resisted such depositions for months). In any event, Defendants are not entitled to this information until the deadline for expert disclosures set by the Court's Scheduling Order. Plaintiff has already provided its preliminary infringement contentions demonstrating its knowledge of how the websites at issue infringe based on publically available information, to which Defendants have never previously raised an objection. Plaintiff will provide the additional requested information after it has the appropriate discovery and at the time frame provided in the Court's order.

Second, Defendants are not entitled to have TQP identify all of its communications with IPNav for several reasons. As an initial matter, Defendants fail to demonstrate the relevance of these communications, as is their burden on a motion to compel. Also, it is extremely broad and incredibly burdensome to request that TQP identify all of its communications with IPNav,

1

including all of its oral communications. Finally, as IPNav is TQP's retained advisor for patent monetization services, these communications are privileged from disclosure pursuant to the common interest privilege. Importantly, District Judge Leonard P. Stark from the United States Court for the District of Delaware has recently ruled on a very similar issue involving IPNav's communications with another company to which it has been providing monetization services, and ruled that the common interest privilege protects all confidential communications with that company during the period IPNav has been providing such services. *Walker Digital v. LinkedIn Corporation*, C.A. No. 11-318-LPS (October 25, 2012) (hearing transcript attached as Exhibit A).

Defendants' Motion should be denied in its entirety.

## II.  BACKGROUND

### A.  Summary of the Patent-In-Suit.

The inventions claimed in U.S. Patent No. 5,412,730 (the "'730 patent") relate generally to a novel way of approaching key management for electronic data encryption. Data encryption applies keys to clear text using an algorithm to create cipher text, a coded form of the original clear text. Complaint, Ex. A at 1:15-17. Changing encryption keys frequently leads to more secure data transmissions, but requires more overhead for transmitting the keys to the receiver and/or signaling the receiver to change keys. *Id.* at 1:22-36. One novel aspect of the inventions claimed in the '730 patent is the use of the data transmission itself, without additional overhead, to implement key changes. This approach to key management is now incorporated in widely used encryption systems, including systems that use the RC4 encryption cipher in combination with either the Secure Sockets Layer ("SSL") or Transport Layer Security ("TLS") encryption protocol.

That an entity, such as Defendants, uses either SSL or TLS in connection with the RC4 cipher is public information. This information can easily be obtained by navigating to a website with a standard web browser, such as Firefox v. 10.0.02, and viewing the "Page Info" by either selecting this option with a right click or in the "Tools" pull-down menu. However, the exact manner in which that website utilizes SSL/TLS and RC4 is not public and is specific to that

website.

### B. Facts Relevant to Interrogatories Nos. 4-8.

#### 1. TQP Served Newegg and HSN With Its Infringement Contentions Almost One Year Ago and Received No Objections Concerning Their Contents.

On March 12, 2012, TQP served its list of Accused Instrumentalities and Infringement Contentions for HSN and Newegg. The Accused Instrumentalities consisted of eight separate HSN Websites and three separate Newegg Websites. Ex. B.[1] The Infringement Contentions for each website contained an almost 30-page discussion demonstrating: (1) that the accused instrumentalities used a version of SSL and/or TLS in connection with the RC4 cipher for encrypted transactions based on publically available information; and (2) how the use of SSL and/or TLS in connection with RC4 infringed the asserted claims of the '730 patent.

Neither Defendant, in the eleven months that preceded the filing of the instant motion to compel, ever contended that the infringement contentions were inadequate or failed to provide a basis demonstrating how "the SSL and/or TLS encryption protocols or the RC4 algorithm allegedly cause infringement of the '730 patent," as they now claim. Dkt. No. 174, at 6.

#### 2. The Interrogatories at Issue Seek Specific Information About Defendants' Accused Websites For Which TQP Has Not Yet Completed Discovery.

On October 31, 2012, Defendants (along with now-dismissed defendant QVC, Inc.) served their first set of common interrogatories on TQP. Prior to this time, TQP had not taken the depositions of Defendants and only written discovery had been exchanged.

The actual contents of these interrogatories are ignored in Defendants' motion. The interrogatories, Nos. 4-8, requested that TQP identify how the "specific elements" or the "specific conditions" of Defendants' accused websites satisfy the various claims limitations. The text of these requests is set forth below:

---

[1] Exhibit B contains the infringement contentions for one of Newegg's accused websites. The discussions for the other accused websites are similar.

INTERROGATORY NO. 4:
For each of the Accused Instrumentalities, state all facts, and identify all documents and things, relating to Your contention that such Accused Instrumentality includes a seed value, as required by the Asserted Claims, ***including the identity of the specific element of such Accused Instrumentality that You contend satisfies the claim limitation "seed value," as required by the Asserted Claims.***

INTERROGATORY NO. 5:
For each of the Accused Instrumentalities, state all facts, and identify all documents and things, relating to Your contention that such Accused Instrumentality includes a key value or sequence of key values generated by such Accused Instrumentality, or such Accused Instrumentality causes the generation of such key value, ***including the identity of the specific element of such Accused Instrumentality that You contend satisfies the claim limitations "key value," "first sequence of pseudo-random key values," and "second sequence of pseudo-random key values," as required by the Asserted Claims.***

INTERROGATORY NO. 6:
For each of the Accused Instrumentalities, state all facts, and identify all documents and things, relating to Your contention that such Accused Instrumentality includes a communication link, including ***the identity of the specific element of such Accused Instrumentality that You contend satisfies the claim limitation "communication link," as required by the Asserted Claims.***

INTERROGATORY NO. 7:
For each of the Accused Instrumentalities, state all facts, and identify all documents and things, relating to Your contention that such Accused Instrumentality generates a new key value at a time dependent upon a predetermined characteristic of the data being transmitted over said link, as required by the Asserted Claims, including without limitation ***the identity of the specific condition present in the Accused Instrumentalities that You contend satisfies the claim limitation "time dependent upon a predetermined characteristic of the data being transmitted over said link," as required by the Asserted Claims.***

INTERROGATORY NO. 8:
For each of the Accused Instrumentalities, state all facts, and identify all documents and things, relating to Your contention that such Accused Instrumentality includes, acts upon, or acts based on any condition related to blocks, as required by the Asserted Claims, including without limitation, ***the identity of the specific element of such Accused Instrumentality that You contend satisfies the claim limitations "sequence of blocks," predetermined number of said blocks," and "blocks," as required by the Asserted Claims.***

TQP initially objected to each of the interrogatories as they were premature contention interrogatories, best answered after the completion of discovery, and on the grounds that they sought expert information in advance of the date for disclosure of expert reports. Dkt. No. 174 at

4

Ex. C. After meeting and conferring with Defendants concerning these responses TQP agreed to amend the interrogatories to incorporate by reference the portion of its infringement contentions concerning the claim elements listed in the interrogatories. These Supplemental Responses were served on January 4, 2013.

When Defendants requested still more information, TQP informed them that TQP "does not yet have the information necessary to state with any further specificity how Newegg's and HSN's use of SSL/TL and RC4 infringe other than as it set forth in the infringement contentions," as TQP had not yet completed the discovery (including taking HSN's and Newegg's depositions) to fully understand how HSN and Newegg's systems use SSL/TLS and RC4. Dkt. No. 174-5. Nonetheless, this Motion followed.

### 3. Defendants' Refusal to Provide the Information Necessary to Answer the Interrogatories.

While HSN and Newegg were in the process of drafting this Motion, they were also delaying responding to the discovery that would allow TQP to obtain the information needed to provide the responses that they seek. Specifically, on December 14, 2012, TQP served its 30(b)(6) deposition notice on Newegg, and on January 4, 2013 TQP served its 30(b)(6) deposition notice on HSN. Exs. C, D. Both depositions were noticed for January 17, 2013. However, counsel for HSN and Newegg stated their clients were not available on those dates and refused for over one month to provide alternative dates for deposition. Exs. E, F. When HSN and Newegg did finally provide deposition dates, the dates provided were not for several more weeks in the future—HSN is currently set to be deposed on March 20 and 21,[2] and Newegg is scheduled to be deposed on April 9-11. Exs. G, H.

### C. Facts Relevant to Interrogatory No. 11

#### 1. The Interrogatory and TQP's Response.

The other interrogatory at issue, Interrogatory No. 11 requests that TQP:

---

[2] Further, HSN has stated that it will make its three 30(b)(6) witnesses available for only one-half day on these dates. Ex. H.

> Explain in detail, and identify all documents and things relating to IP Navigation Group, LLC's involvement in the case styled TQP Development, LLC v. 1-800-Flowers.com, et al., case no. 2:11-cv-00248, including, but not limited to, <u>all communications between IP Navigation Group, LLC and TQP Development, LLC</u> relating to the pre-filing investigation, filing, and prosecution of the case styled TQP Development, LLC v. 1-800-Flowers.com, et al., case no. 2:11-cv-00248. (Emphasis added.)

TQP's response was as follows:

> TQP objects that this interrogatory calls for the disclosure of attorney work product information and/or seeks to invade the attorney-client privilege and common interest privilege. TQP objects that this interrogatory calls for the production of information not in the possession, custody or control of TQP. TQP further objects to this interrogatory to the extent it is vague, overly broad, unduly burdensome, and seeks the disclosure of documents or information that are not relevant to any claim or defense in this action, or reasonably likely to lead to the discovery of admissible evidence that is relevant to any claim or defense in this action. TQP further objects to this interrogatory as it has multiple subparts.
>
> Subject to and without waiving the foregoing objections, TQP responds as follows: IPNav has been retained by TQP to provide patent monetization services, including acting as TQP's representative in licensing and settlement matters. A general description of IPNav's services can be found at IPNav.com.

### 2. TQP's Relationship with IPNav.

IPNav is a full-service patent monetization firm that assists patent holders, such as TQP. Prior to filing the first of its lawsuits concerning the patent-in-suit in 2008, TQP retained IPNav to assist in monetizing the patents-in-suit. Spangenberg Decl. at ¶ 2. IPNav rendered services to TQP pursuant to an agreement under which IPNav agreed to provide licensing, enforcement, and settlement services to TQP in exchange for compensation on a success basis with a portion of the proceeds successfully reached through licensing being paid to IPNav. Spangenberg Decl. at ¶ 3. Pursuant to this agreement, TQP and IPNav have agreed to cooperate with each other and share confidential and privileged information, and to take all steps necessary to protect the privileged and confidential nature of the shared information. Spangenberg Decl. at ¶¶ 3-4.

### III. DEFENDANTS' MOTION SHOULD BE DENIED

#### A. Legal Standards.

A party may only move to compel the disclosure of information or materials requested that are relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37; *Export Worldwide, Ltd. v. Knight*,

241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). Materials and information are only discoverable if they are "relevant to any party's claim or defense" or if they "appear[] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Knight,* 241 F.R.D. at 263. Only after this burden has been established does the burden shift to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Spiegelberg Mfg., Inc. v. Hancock*, 2007 U.S. Dist. LEXIS 88987, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007); *Gauthier v. Union Pacific R.R. Co.*, 2008 U.S. Dist. LEXIS 47199, 2008 WL 247016, at *3 (E.D. Tex. June 18, 2008).

Further, the District Court has broad discretion to both limit and dictate the sequence of discovery. *See, e.g.*, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Corwin v. Marney Orton Invs.*, 843 F.2d 194, 200 (5th Cir. 1988). This Court has so limited the Discovery in this Case. Pursuant to the Scheduling and Discovery Order (Dkt. No. 103), TQP was required to serve a list of Asserted Claims and Infringement Contentions on March 12, 2012, claim construction discovery was to be completed by January 11, 2013; and expert disclosures are due on April 25, 2013.[3]

### B. Interrogatories 4-8 Seek TQP's Expert Infringement Analysis In Advance of the Schedule Set by the Court and Prior to the Completion of Discovery.

Defendants utterly fail to meet their burden to compel TQP to provide a further response to Interrogatories Nos. 4-8.

Defendants' motion is based on misstatement of the contents of the interrogatories at issue.

---

[3] Pursuant to the Court's Order (Dkt. No. 169), the parties recently submitted a Proposed Docket Control Order for the Consolidated cases modifying the schedule for the new trial and pretrial conference dates (Dkt. No. 175) which has yet to be entered by the Court. However, this schedule does not affect those dates that have already transpired, including disclosure of infringement contentions and completion of claim construction discovery.

Contrary to Defendants' claims, the interrogatories do not request that TQP identify "components of SSL and TLS encryption protocols and the RC4 encryption algorithm [that] correspond to the claimed elements of the '730 patent." Dkt. No. 174 at 4. Instead, the interrogatories requested that TQP identify "***the specific condition***" or the "***specific element***" of the **Defendants'** accused websites that met those limitations. Contrary to Defendants contentions, this does not ask TQP to discuss how the use of a general standard infringes the patent-in-suit; instead, it seeks defendant-specific information. TQP has already identified how Defendants' accused websites infringe based on the publically available information in its Infringement Contentions served almost one year ago, which Defendants have not claimed to be deficient.

The information Defendants seek in this motion is not publically available and could only come from Defendants. TQP does not yet have this information based on the current status of discovery, and will not have this information until it completes such discovery including taking Defendants' deposition—something which Defendants have been refusing to provide.

Defendants are incorrect in stating that there is not any "defendant-specific implementation of these encryption standards that would demonstrate a unique manner of infringement." Dkt. No. 174 at 4. In fact, how the Defendants' systems work and infringe the patent can vary based on, for example, (1) what version of SSL and/or TLS is utilized; and/or (2) whether they have made any modifications to the industry standards. Again, TQP will not know how these types of details of Defendants' systems work until discovery is completed and TQP has at least taken the Defendants' depositions.

For this reason, Defendants' constant invocation of the TQP's prior case against TDAmeritrade ("TDA") is inapposite to this Motion. TDA's expert infringement report in the TDA case was based on specific (and in most cases highly confidential) information related to TDA. This report sheds no light on how Defendants' specific websites infringe in this case.[4]

---

[4] Defendants coyly avoid stating whether they have access to, or have reviewed, the TDA expert report that they reference. Dkt. No. 174 at 4. It is noteworthy that one of TQP's expert reports from the TDA case was attached as an Exhibit to the consolidated Defendants' Claim Construction Brief (Dkt. No. 179), and lodged under seal due to its confidential nature. If, as Defendants claim,

In any event, Defendants are simply not entitled to the information they seek at this time, pursuant to the current case schedule. The current scheduling order provides that Preliminary Infringement Contentions were due on March 12, 2012, and that expert disclosures are due on April 25, 2013. TQP complied with the Court's order and produced infringement contentions on March 12, 2012. Neither HSN nor Newegg ever stated that these were insufficient or requested that they be modified prior to filing this Motion. If they actually had an objection to the infringement contentions, this should have been raised long ago. Further, Defendants are not entitled to receive TQP's expert infringement analysis identifying specifically how the websites infringe—which is essentially what they are seeking in this motion—until April 25, 2013. Defendants fail to provide any reason that they are entitled to this information earlier than pursuant to the schedule set by the Court, or any colorable reason that they will be prejudiced by all parties following the Court's schedule for disclosure of expert infringement analysis. Defendants' claim that they need this discovery for "the upcoming Markman hearing" (Defendants' Brief at 2) is time barred, as all Claim Construction Discovery was required to be completed by January 11, 2013—one month before they filed their motion.

Finally, Defendants fail to explain why TQP's infringement contentions do not provide sufficient answers to the interrogatories based on publically available information known to TQP. In the Motion, Defendants only address Interrogatory No. 4 concerning the identification of the "seed value." Dkt. No. 174 at 5. They claim to not be able to determine "what the seed is" from the infringement contentions. *Id.* However, the portion of the infringement contentions they quote identifies the "seed." Specifically Defendants note that "TQP has alleged [in its infringement contentions] that '[t]he input K in phase one of the above-described [RC4] algorithm is described in SSL documentation as an encryption key ***and is used as a seed*** to generate a pseudo-random sequence of bytes.'" Dkt. No. 174 at 5 quoting Ex. F (emphasis added). In other words, in the

---

the TDA report already contains all the information they seek, then Defendants have that report and thus this motion is baseless. But of course the TDA report does not contain information related to these specific moving Defendants, as Defendants well know.

example provided, "input K" was the seed value. It is unclear what else TQP could have stated to identify this further.

In sum, Defendants' motion requests that TQP identify information that can only come from expert analysis based on complete factual discovery. Discovery of expert opinion is premature, and Defendants have themselves prevented TQP from completing fact discovery. For these reasons, Defendants Motion should be denied.

## IV. HSN AND NEWEGG ARE NOT ENTITLED TO COMMUNICATIONS BETWEEN TQP AND IPNAV AS REQUESTED BY INTERROGATORY NO. 11

HSN and Newegg also seek to compel TQP to provide a further response to Interrogatory No. 11, requiring TQP to identify all of its communications with IPNav. This request should likewise be denied.

As an initial matter, Defendants do not respond to TQP's objection that this interrogatory seeks irrelevant information nor do they make any attempt to demonstrate the relevance of this information as is their burden on a motion to compel. *Knight,* 241 F.R.D. at 263. For this reason alone, the motion should be denied.

Likewise, Defendants fail to respond to TQP's objection that responding to the interrogatory is overly broad and unduly burdensome. Indeed, requiring TQP to identify all of its ***oral and written communications*** with IPNav would be very burdensome and Defendants make no attempt to claim otherwise. These communications would be quite numerous as TQP has been negotiating settlements since 2008 and has entered into settlement agreements with over ninety entities. For this additional reason, the Motion should be denied.

Defendants are also incorrect in claiming that the common interest privilege does not protect the requested information from disclosure. Although Defendants attempt to assert that an attorney must be involved in the communications in order for the common interest privilege to apply, the law is not so limited. For instance, *Ferko v. Nascar*, 219 F.R.D. 396 (E.D. Tex. 2003)—relied on by defendants—holds that the "common interest doctrine protects communications between two parties or attorneys that share a common legal interest. . . . The common interest

doctrine applies to cases involving co-defendants, an insurer and an insured, and a patentee and a licensee." *Id.* at 401. *See also Power Mosfet Techs v. Siemens AG*, 206 F.R.D. 422, 424 (E.D. Tex. October 30, 2000) (noting that privilege was upheld "when claimed by a patentee and a licensee because both have a legal interest in the enforcement of the patent, the patentee for obvious reasons and the licensee because it preserves his legal position with respect to infringers").

None of the cases cited by the Defendants involve application of the common interest privilege to a patent monetization firm such as IPNav. Indeed, it does not appear as though either the Fifth Circuit or the Eastern District of Texas have yet addressed this precise issue. However, the District of Delaware has found that communications between a patent monetization firm and its client are privileged under a virtually identical factual scenario to that herein in *Xerox Corp. v. Google Inc.*, 801 F. Supp. 2d 293 (D. Del. 2011) (Stark, J.). In finding that the common interest privilege applied to protect communications between Xerox Corp., the patent holder, and IPValue, its retained patent monetization advisor, the Court noted:

> The relationship between these two entities is sufficiently imbued with common legal interests in that it plainly relates to litigation. Among the tasks Xerox retained IPValue to assist with is licensing strategy and patent enforcement, including litigation. Because IPValue's compensation from Xerox is based on a contingency fee, Xerox and IPValue share a common interest in Xerox prevailing in the instant litigation and the two companies have operated with the expectation that any shared privileged communications would be kept confidential and protected from disclosure.

*Id.* at 303-04. The District of Delaware has similarly recognized that "[c]ommunications between clients and attorneys allied in a common legal cause remain protected because it is reasonable to expect that parties pursuing common legal interests intended resultant disclosures to be insulated from exposure beyond the confines of the group." *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) (internal quotation marks omitted) (citing *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996)). Likewise, as noted earlier, the District of Delaware has extended this privilege to communications between IPNav and another one of its clients in *Walker Digital, LLC v. LinkedIn*. (Ex. A at 19:22-25:7).

The foregoing facts and precedent establish that TQP and IPNav have a common legal

11

interest in the enforcement of TQP's patent rights, including this litigation. Just as in *Xerox* and *Walker Digital*, TQP retained IPNav as an advisor with respect to licensing strategy and patent enforcement, and IPNav is compensated by TQP by payment to IPNav on a success basis with a portion of the proceeds successfully reached through licensing being paid to IPNav. Spangenberg Decl. at ¶ 3. Further, TQP and IPNav have operated with the expectation that any shared privileged communications would be kept confidential. Spangenberg Decl. at ¶¶ 4-5. Relying on the common interest privilege, TQP and its counsel have shared privileged and confidential information with IPNav. *Id.* Accordingly, all documents and communications shared between TQP and IPNav which relate to their common interest are privileged and non-discoverable.

For this additional reason, Defendants' motion should be denied.

## V. CONCLUSION

For all of the foregoing reasons, Defendants' motion to compel should be denied in its entirety.

Dated: March 4, 2013

Respectfully submitted,

**TQP DEVELOPMENT, LLC**

By: /s/ *Adam S. Hoffman*
Adam S. Hofman

Marc A. Fenster, CA Bar No. 181067
E-mail: mfenster@raklaw.com
Adam S. Hoffman, CA Bar No. 218740
E-mail: ahoffman@raklaw.com
Alexander C. Giza, CA Bar No. 212327
E-mail: agiza@raklaw.com
**RUSS, AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile: 310/826-6991

Andrew W. Spangler, TX Bar No. 24041960
E-mail: spangler@spanglerlawpc.com
**SPANGLER LAW P.C.**

208 N. Green Street, Suite 300
Longview, Texas 75601
Telephone:    903/753-9300
Facsimile:    903/553-0403

**Attorneys for Plaintiff**
**TQP DEVELOPMENT, LLC**

# CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on March 4, 2013, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ *Adam S. Hoffman*
Adam S. Hoffman
