Ex. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **TQP DEVELOPMENT, LLC,** <br><br> Plaintiff, <br><br><br> **1-800-FLOWERS.COM, INC, et al.,** | **Civil Action No. 2:11-CV-248-JRG-RSP** <br><br> **CONSOLIDATED** <br><br> **JURY TRIAL DEMANDED** |

**FINAL INSTRUCTIONS[1]**

Members of the Jury:

You have now heard the evidence in this case. I will now instruct you on the law that you must apply to that evidence. It is your duty to follow the law as I give it to you. However, as I have said previously, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

The attorneys will soon make their closing arguments. The closing arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in recalling and understanding the evidence and the parties' contentions.

**1.     GENERAL INSTRUCTIONS[2]**

---

[1] The parties reserve the right to revise and supplement these instructions as trial progresses and the evidence is presented, including the informal and formal charge conferences.

[2] Where the parties have agreed on a particular instruction, only that instruction is provided. Where the parties were unable to agree on a particular instruction, TQP's proposed version is provided in underline, followed immediately by Newegg's's proposed version in *italic*. All disputed language is highlighted in yellow.

Sources: Court's Charge in *VirnetX, Inc. v. Microsoft Corp*., No. 6:07-CV-80, at 1-2 (E.D. Tex. 2010) (in part) ; Court's Charge in *i4i Ltd. P'ship v. Microsoft Corp*., No. 6:07-CV-113, at 1-2 (E.D. Tex. 2009); Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc*., No. 2:06-CV-272, at 1 (E.D. Tex. 2009); Court's Charge in *Orion IP, LLC v. Hyundai Motor Am.*, No. 6:05-CV-322, at 1 (E.D. Tex. 2008); Court's Charge in *Forgent Networks, Inc. v. EchoStar Techs. Corp*., No. 6:06-CV-208, at 1-2 (E.D. Tex. 2006); Court's Charge in *z4 Techs., Inc. v. Microsoft Corp*., No. 6:06-CV-142, at 1 (E.D. Tex. 2006); J. Davis Model Instructions, at 1.

[NEWEGG'S PROPOSAL: A verdict form has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.]

In determining whether any fact has been proven in this case, there are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence- that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

You may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them. You may also consider any stipulations or agreements of the parties in this case.

Additionally, when knowledge of a technical subject may be helpful to the jury, a person who has special training or experience in that technical field – called an "expert witness" – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

Certain testimony in this case has been presented to you through depositions. A

deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition. Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. Accordingly, you should judge the credibility of and weigh the importance of deposition testimony to the best of your ability, just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that you have established by the testimony and evidence in the case.

You may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you are the sole judges of the credibility of all witnesses and what weight and effect to give the evidence in this case.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate on what was said during such discussions that took place

outside of your presence.

Certain exhibits shown to you are illustrations. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

## 2.    Burdens of Proof [3]

I will turn now to the issue of the burden of proof, which I discussed with you a little bit at the outset of the case. TQP has the burden of proving infringement by a preponderance of the evidence.  "Preponderance of the evidence" means evidence that persuades you that a claim is more likely to be true than untrue.  In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

Newegg bears the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must have persuaded you that the claim or defense is highly probable. In determining whether any fact has been proven by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of whom may have called them, and all exhibits received in evidence regardless of who may have produced them. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

## 3.1    TQP's Contentions

---

[3] Sources: Court's Charge in *i4i*, at 5-6; Final Jury Instructions in *Mass Engineered*, at 5-6; Court's Charge in *z4 Techs.*, at 5-6; J. Davis Model Instructions, at 5-6. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007).

Plaintiff TQP Development, LLC (who you have heard referred to throughout the trial as TQP) contends that defendant Newegg, Inc. (who has been referred to throughout the trial as Newegg) infringes claims 1, 6, 8 and 9 of the United States Patent No. 5,417,730 or the [Jones Patent / '730 Patent]. I may refer to the [Jones Patent / '730 Patent] as the patent-in-suit. Collectively, I may refer to claims 1, 6, 8 and 9 of the [Jones Patent / '730 Patent] as the "asserted claims." The [Jones Patent / '730 Patent] covers a method of transmitting data in encrypted form as set forth in the claims.  As you have heard, TQP says that the way Newegg encodes or encrypts communications with its website systems infringe claims of the [Jones Patent / '730 Patent]. TQP is seeking damages for Newegg's alleged infringement.

**3.2    Newegg's Contentions**

Newegg denies that it has infringed the [Jones Patent / '730 Patent]. Newegg also denies that it has induced others to infringe the [Jones Patent / '730 Patent]. Newegg denies that TQP is entitled to any damages or other relief.

Furthermore, Newegg contends that the asserted claims of the [Jones Patent / '730 Patent] are invalid. Invalidity is a defense to infringement. Generally, Newegg contends that the asserted claims are invalid because they were not new or would have been obvious to one of ordinary skill in the art. Therefore, even though the U.S. Patent and Trademark Office (or PTO) has allowed the asserted claims, you the jury must decide whether those claims are invalid.

**3.3    Issues to be Decided**

Your job is to decide whether the asserted claims have been infringed and whether any of the asserted claims are invalid. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide what amount of money damages, if any, are to be awarded to TQP as compensation for such infringement.

**4.      CLAIMS OF THE PATENTS IN SUIT[4]**

Before you can decide many of the issues in this case, you will need to understand the

---

[4] Sources: Court's Charge in *i4i*, at 6; Final Jury Instructions in *Mass Engineered*, at 9; Court's Charge in *Orion*, at 8-9; Court's Charge in *z4 Techs.*, at 8-9; J. Davis Model Instructions, at 8.

role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims themselves that define what a patent covers. The figure and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers collectively depends on what each of its claims covers. I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements in that sentence, then it is covered by the claim.

There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations."

[*NEWEGG'S PROPOSAL: For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop. The tabletop, legs and glue are each a separate element (requirement) of the claim.*]

When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is not covered by the claim, that product does not infringe that claim.

## 4.1    Independent and Dependent Claims[5]

Patent claims may exist in two forms, referred to as independent claims and dependent

---

[5] Sources: Court's Charge in *i4i*, at 6-7; Court's Charge in *Forgent*, at 10; J. Davis Model Instructions, at 8-9.

claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.  Asserted claim 1 is an independent claim.   The [Jones Patent / *'730 Patent*] also contains dependent claims.   Each dependent claim refers to an independent claim.   A dependent claim includes each of the requirements of the independent claim to which it refers, as well as the additional requirements described by the dependent claim itself.

In order to find infringement of a dependent claim, you must first determine whether the independent claim to which it refers has been infringed.  In this case, if you decide that the independent claim (i.e., claim 1) has not been infringed, then the dependent claims (i.e., claims 6, 8 and 9) cannot have been infringed. If you decide that the independent claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused product. If each additional requirement has been included, then the dependent claim has been infringed.

## 4.2     Interpretation of the Claims[6]

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by that claim you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

You first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of

---

[6] Sources: Court's Charge in *i4i*, at 7; Final Jury Instructions in *Mass Engineered*, at 9-10; Court's Charge in *Orion*, at 9-10; Court's Charge in *Forgent*, at 9-10; Court's Charge in *z4 Techs*, at 9; J. Davis Model Instructions, at 8.

the case, I have determined the meaning of the claims, and I have provided to you my definitions of certain claim terms. These are in your juror notebooks. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common and ordinary meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide, not mine.

You have been provided with copies of the [Jones Patent / *'730 Patent*] and copies of the claim term definitions, and you may use them in your deliberations.

### 4.2.1   Independent Claim Terms

The following definitions apply to language in claim 1, the sole independent claim asserted in this case.

The beginning portion, or preamble, of claim 1 uses the word "comprising." The word "comprising," when used in the preamble, means "including" or "containing." As a result, a device that includes all the limitations of the claim, as well as additional elements, is covered by the claim.

The term "sequence of blocks in encrypted form" means "sequence of two or more blocks that have been encrypted."

The term "block" means "a group of bits, such as a character, word, or other unit of data."

The phrase "providing a seed value to both said transmitter and receiver" means "providing the same seed value to both the transmitter and receiver."

8

The phrase "seed value" has its plain meaning. However, you should noted that the seed value is provided to the transmitter prior to generating the first sequence of pseudo-random key values, and the seed value is provided to the receiver prior to generating the second sequence of pseudo-random key values.

The term "pseudo-random key values," means "a sequence of numbers that are generated by supplying a seed value to an algorithm, a sequence of numbers have no apparent regularities unless the seed value and algorithm are known or determined."

The phrase "based on said seed value" means "based exclusively on said seed value."

The term "each new key value in said sequence being produced at a time dependent upon said predetermined characteristic of said data transmitted over said link" means "a new key value in the second sequence is produced each time a condition based on a predetermined characteristic of the transmitted data is met at the receiver."

The term "predetermined" means "determined before any communication of a sequence of encrypted blocks."

The term "encrypting the data" means "converting clear text data into cipher text."

The phrase "a new one of said key values in said first and second sequences being produced each time a predetermined number of said blocks are transmitted over said link" means "a new key value in the first and second sequence is used each time a predetermined number of blocks have been sent from the transmitter over the communication link." *[NEWEGG'S PROPOSAL: You should note, as to the determination of whether "a predetermined number of said blocks" have been "transmitted over said link," the claim explicitly refers to transmission, not to encryption or to some other step of preparing for transmission.]*

The term "decrypting the data" means "converting cipher text into clear text."

### 4.2.2 Dependent Claim Terms

The phrase, found in claim 6, "said provided seed value is one of a number of seed values for a plurality of remote locations with which secured communication is required" means "when secured communication is required with two or more remote locations, providing more than one

seed value for a number of the remote locations for which secured communication is required."

The phrase, found in claim 8, "associating different ones of seed values with each of a plurality of remote locations with which secured communication is required" means "when secured communication is required with two or more remote locations, associating a different seed value with each of the remote locations.'

5.      **INFRINGEMENT**[7]

As established by U.S. Code Title 35, Section 271, a patent owner has the right to exclude others from making, using, or selling the invention covered by the patent claims during the 20-year life of the patent throughout the United States.  Infringement occurs when a person, without the patent owner's permission, makes, uses, sells, or offers for sale, something that is within the scope of what the patent covers.

Only the claims of a patent can be infringed. To determine whether there is infringement, you must compare the allegedly infringing product with the patent claims as I have defined them for you. In order to infringe a patent claim, a product or method or process must include each and every element of the claim. I'll refer to the separate paragraphs in each of the claims at issue in this case as "steps."  Sometimes in this case the parties have referred to the steps of the claims as "limitations."  That's a common patent law expression, but I'll avoid it in the interest of clarity. A claim step is present if it exists in the accused product or process as it is described in the claim language.

[*NEWEGG'S PROPOSAL: So, in determining whether Newegg infringes TQP's asserted claims, you must determine whether Newegg's accused website systems perform each and every method step recited in the claims in the order and manner required by the claims. In order to prove infringement, TQP must prove by a preponderance of the evidence that Defendants' accused systems include each and every requirement or limitation of the claims. If a Defendant's accused system or product omits any requirement recited in the Asserted Claim(s), then there is*

_____
[7] Sources: Court's Charge in *VirnetX*, at 7-8; Court's Charge in *i4i*, at 8-9.

*no infringement of that claim. You must consider each claim individually.*]

A claim may be infringed directly or indirectly.  TQP alleges that Newegg infringes directly by performing the claimed method steps itself or by directing or controlling others to perform the steps such that Newegg should be held responsible for such actions. To the extent Newegg does not perform a method step, TQP also alleges that Newegg infringes indirectly by actively inducing its [customers/*website users*] to perform such method steps.  I will explain active inducement later.

TQP need only show that any one of the claims is infringed to be entitled to damages.  In addition, TQP does not need to show that Newegg intended to infringe or knew of the [Jones Patent / *'730 Patent*].[8]

I will now instruct you how to decide whether or not Newegg has directly infringed one or more of the asserted claims of the [Jones Patent / *'730 Patent*]. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another claim.

## 5.1   Direct Infringement – Literal Infringement[9]

There are two types of "direct infringement": (1) literal infringement" and (2) "infringement under the doctrine of equivalents."

In order to prove direct infringement by literal infringement of the asserted method claims, TQP must prove by a preponderance of the evidence that Newegg, or those it directs or controls as I will describe in further detail below, actually performed each and every step of the claimed method in the United States.

In determining whether a Newegg accused product or service infringes one or more of TQP's asserted claims, you must compare the accused product or service with each and every one of the requirements of a claim to determine whether an accused product or service contains

---

[8] *Cf. Cheetah OMNI, LLC v. Verizon Servs. Corp,* No. 6:09-cv-260, Dkt. No. 437, at 11 (referring to no knowledge required).
[9] Sources: Court's Charge in *VirnetX*, at 8-10; Court's Charge in *i4i*, at 10-11

each and every requirement recited in a claim. A claim requirement is present if it exists in an accused product or service or its method of use is just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art. If any of the accused products or services omit even a single requirement recited in a claim, then you must find that the particular product or service does not literally infringe that particular claim.

The specific Newegg websites accused of infringing the Asserted Claims of the [Jones Patent / '730 Patent] are known as www.neweg.com, sellerportal.newegg.com and www.newegg.business.com. TQP also claims that Newegg has actively induced others to infringe the [Jones Patent / '730 Patent].

## 5.2    Direct Infringement - Doctrine of Equivalents[10]

TQP alleges that the following five claim limitations are present in the accused Newegg systems under the doctrine of equivalents:

- "generating a first sequence of pseudo-random key values based on said seed value at said transmitter, each new key value in said sequence being produced at a time dependent upon a predetermined characteristic of the data being transmitted over said link" (appears in claim 1);

- "wherein said provided seed value is one of a number of different seed values for a plurality of remote locations with which secure communications is required" (appears in claim 6); and

- "associating different ones of seed values with each of a plurality of remote locations with which secured communication is required" (appears in claim 8).

These are the only claim limitations you need to consider under the doctrine of equivalents.

---

[10] Sources: Court's Charge in *VirnetX*, at 10-11; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (U.S. 1997) ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."); *id* at 40 ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.").

Under the doctrine of equivalents, a method or product infringes a claim if the accused method or product performs steps or contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused method or product. You may find that a step or element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim. In order for the action or structure to be considered interchangeable, the action or structure must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient. In order to prove infringement by "equivalents," TQP must prove the equivalency of the actions or structure to a claim element by a preponderance of the evidence.

[*NEWEGG'S PROPOSAL: To support a finding of infringement under the doctrine of equivalents, TQP must provide evidence and testimony that is not conclusory—there must be particularized testimony and linking argument with respect to the function, way, and result test.[11] Equivalence must be determined as to individual claim elements, not to the claimed invention as a whole.[12] But the scope of what is considered equivalent to a claim limitation must not be so broad that the claim element is effectively eliminated from the claim.[13] For example, if a claim limitation required "step A occur before step B," to view it as equivalent to have step B occur before step A would be improper because it would effectively eliminate the requirement that step A occurs first.*

*The doctrine of equivalents cannot expand patent rights to cover prior art systems or obvious extensions of the prior art.[14] Thus, the prior art may preclude a finding of infringement*

---

[11] *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566-67 (Fed. Cir. 1996).
[12] *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)
[13] *Id.*
[14] *Wilson Sporting Goods v. David Geoffrey & Assoc.*, 904 F.2d 677 (Fed. Cir. 1990).

*under the doctrine of equivalents. I will explain what "prior art" is, but generally speaking, "prior art" is things that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.*

*To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular product or process that is accused of infringing a particular claim, you must determine what products or processes are in the "prior art" as well as what products or processes would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.*

*It is impermissible for any alleged equivalent to cause the claim to encompass the prior art.[15] This is because a claim that encompasses the prior art would not be patentable, as I will explain to you later in more detail.]*

**[TQP'S PROPOSAL: 5.3 Joint Direct Infringement[16] / [NEWEGG'S PROPOSAL: *5.3 Divided Infringement[17]*]**

**[TQP PROPOSAL: Direct infringement requires a party to perform or use each and every step of a claimed method, literally or under the doctrine of equivalents. Where no one party performs all of the steps of a claimed method but multiple parties combine to perform every step of the method, that claim will nevertheless be directly infringed if one party, in this case Newegg, exercises control or direction over the entire method so that every step is attributable to the controlling party.]** *[NEWEGG'S PROPOSAL: If TQP does not prove that Newegg's accused systems performed each and every step in the patent claims, Newegg cannot be liable for direct infringement unless TQP proves that Newegg directed or controlled other parties to perform the omitted steps, such that every step performed by the other parties is attributable to Newegg as the controlling party or*

---

[15] *Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 684 (Fed. Cir. 1990).
[16] Source: Court's Charge in *DDR Holdings, LLC v. Digital River, Inc.*, No. 06-42 at 12-13 (E.D. Tex. ).; *BMC Resources*; *Muniauction*
[17] Source: Court's Charge in *DDR Holdings, LLC v. Digital River, Inc.*, No. 06-42 at 12-13 (E.D. Tex. ).; *BMC Resources*; *Muniauction*

*"mastermind."*]   Mere arms-length cooperation between the parties is not enough [NEWEGG'S PROPOSAL: *and Newegg does not direct or control someone else's equipment or actions merely by entering into a business relationship with that person.*] In determining whether Newegg directed or controlled its [customers/*website users*] to perform any omitted steps, you may consider whether Newegg instructed its [customers/*website users*] to perform the patented steps or provided software enabling those steps to be performed. [NEWEGG"S PROPOSAL: *However, merely giving instructions or prompts to a website user in the performance of the steps necessary to complete infringement, or facilitating or arranging for the website user's involvement in the alleged infringement, are not sufficient to establish direction or control.[18]*]

**5.4 Active Inducement of Infringement[19]**

TQP alleges that Newegg is liable for infringement by actively inducing its [customers / *website users*] to infringe the [Jones Patent / *'730 Patent*] literally or under the doctrine of equivalents.

[*NEWEGG'S PROPOSAL:*

*As I have already instructed you, infringement only occurs when each and every claimed step has been performed. Liability for active inducement of infringement also requires that all of the claimed method steps were performed, either literally or under the doctrine of equivalents. If any one of the recited method steps in the claim was not performed by Newegg or its website users, either literally or under the doctrine of equivalents, Newegg cannot be liable for active inducement of infringement because no underlying infringement took place.*]

To prove that Newegg induced patent infringement of any of the asserted claims, TQP must prove that it is more likely than not that: (1) Newegg knew of the [Jones Patent / *'730*

---

[18] *Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 834 (S.D. Tex. 2008); *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) *aff'd*, 318 F. App'x 908 (Fed. Cir. 2009).
[19] 27 Sources: Court's Charge in *VirnetX*, at 11-12; Court's Charge in *i4i*, at 11-12; Final Jury Instructions in *Mass Engineered*, at 16-17.

*Patent*]; (2) Newegg performed some of the steps of the asserted claim; (3) Newegg induced its [customers / *website users*] to perform any remaining steps of that claim; and (4) Newegg's [customers / *website users*] in fact performed such steps.[20] Newegg induces its [customers / *website users*] if it "cause[s], urge[s], encourage[s], … aid[s]," "advises, … or otherwise induces" them to perform the remaining steps of the claim[, *knowing that the result constitutes infringement*].[21]

"A finding of inducement requires both knowledge of the existence of the patent and knowledge that the [collective performance of the steps of the asserted claim] constitute[s] patent infringement."[22] "The knowledge requirement … may be satisfied by showing actual knowledge or willful blindness."[23] "A party is willfully blind if it believed there was a high probability that the acts constituted patent infringement … and took deliberate actions to avoid learning of the infringement."[24]

[NEWEGG'S PROPOSAL: *Active inducement of infringement cannot occur unintentionally, but requires the specific intent to encourage another's infringement.[25] A party's negligence or recklessness is not sufficient to show this specific intent.[26]  In considering whether or not Newegg had a specific intent to induce infringement, you may consider evidence as to whether Newegg had a good-faith belief that they did not infringe any claims of the patent, or whether Newegg had a good-faith belief that the patent claims are invalid.[27] You may also consider all the circumstances, including whether or not it obtained the advice of a competent lawyer, whether or not it knew of the patents when designing and manufacturing its products, and whether or not it removed or diminished the allegedly infringing features. You may not*

---

[20] *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1318 (Fed. Cir. 2012).
[21] *Id.* at 1307.
[22] *Commil USA, LLC v. Cisco Sys.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013); *see also Akamai Techs., Inc.*, 692 F.3d at 1309.
[23] *Commil USA, LLC*, 720 F.3d at 1366.
[24] *Ericsson v. D-Link*, 2013 U.S. Dist. LEXIS 110585, *34 (E.D. Tex. Aug. 6, 2013) (*quoting Global-Tech Appliances, Inc. v. SEC S.A., U.S.*, 131 S. Ct. 2060, 2068, 2070 (2011)).
[25] *Id.* at 1308.
[26] *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2012-1042 (Fed. Cir. Jun. 25, 2013)

[27] *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2012-1042 (Fed. Cir. Jun. 25, 2013)

==*assume that merely because they did not obtain an opinion of counsel, the opinion would have been unfavorable.*==]

TQP must prove that each of the above requirements is met by a preponderance of the evidence, i.e., that it is more likely than not that the requirements have been met. In addition, you must determine whether there has been active inducement on a claim-by-claim basis. "To be clear, … all the steps of a claimed method must be performed in order to find induced infringement, but … it is not necessary to prove that all the steps were committed by a single entity."[28] ==[NEWEGG'S PROPOSAL: *If you do not find that Newegg specifically meets the intent requirements by a preponderance of the evidence, then you must find that Newegg has not actively induced the alleged infringement.*==]

## 6. Invalidity[29]

Newegg contends that all of the claims of the [==Jones Patent / *'730 Patent*==] that TQP is asserting are invalid. Patent invalidity is a defense to patent infringement. As the [==Jones Patent / *'730 Patent*==] was issued by the United States Patent and Trademark Office, it is presumed to be a valid patent.  That means that the fact that a patent was issued to a particular person does not guarantee that the patent is valid, but once it issues, the law says that if a challenger wants to show that it is invalid, the challenger has to make that showing by clear and convincing evidence.  So patent invalidity is one of the issues in this case to which the clear and convincing evidence standard applies.  In deciding whether particular claims are invalid, you will interpret the claims in the same way that you have in deciding infringement.

I will now instruct you on the rules you must follow in deciding whether or not Newegg has proven that claims 1, 6, 8 and 9 of the [==Jones Patent / *'730 Patent*==] are invalid.  To prove that any claim of a patent is invalid, Newegg must persuade you by clear and convincing evidence.

---

[28] *Akamai Techs., Inc.*, 692 F.3d at 1306.
[29] Sources: Court's Charge *i4i*, at 15; Final Jury Instructions in *Mass Engineered*, at 21; Court's Charge in *Orion*, at 14-15; Court's Charge in *Forgent*, at 12; Court's Charge in *z4 Techs.*, at 15; J. Davis Model Instructions, at 13.

Even though the PTO examiner has allowed the claims of a patent and the patent is presumed valid, you have the responsibility for deciding whether the claims of the patent are valid. For a patent to be valid, the invention claimed in the patent must be new and non obvious. The terms "new" and "non obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Newegg's grounds for asserting invalidity.

Newegg contends that the asserted claims are invalid as being anticipated and/or obvious in view of the "prior art." Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented before October 6, 1989.

## 6.1 Anticipation[30]

In order for someone to be entitled to a patent, the claimed invention must actually be "new" or "novel," meaning that it is not present or disclosed in the prior art.   In general, inventions are new when the claimed product or process has not been made, used, or disclosed before. If a claimed invention does exist in the prior art, it is said to be "anticipated." Anticipation must be determined on a claim-by-claim basis.

For the asserted claim to be invalidated as anticipated, Newegg must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, sold, offered for sale, or described in a single piece of prior art, (i.e., a printed publication, patent, product or process that predates the claimed invention). We refer to such prior art as "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed or present in a single piece of prior art.  [TQP's PROPOSAL: The single prior art reference must clearly and unequivocally disclose all of the requirements of the claim or direct those skilled in the art to

---

[30] Sources: 35 U.S.C. § 120; *University of Rochester v. G.D. Searle & Co., Inc.* 358 F.3d 916, 921 (Fed. Cir. 2004). *Bayer AG v. Schein Pharms.*, Inc., 301 F.3d 1306, 1313 (Fed. Cir. 2002); *In re Hafner*, 410 F.2d 1403, 1406 (C.C.P.A. 1969).

the all of the requirements of the claim without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited prior art.[31] The prior art must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements arranged as in the claim.[32]] Each and every claim limitation must expressly be present [NEWEGG'S PROPOSAL: *or implied*] to a person having ordinary skill in the art of the technology of the invention, so that looking at that piece of prior art, that person could make and use or practice the claimed invention.

[TQP's PROPOSAL: In determining whether the single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what is inherently present or disclosed in that prior art or what inherently results from its practice.  Prior art inherently anticipates a patent claim if the missing element or feature would be the natural result of following what the prior art teaches to persons of ordinary skill in the art. A party claiming inherent anticipation must prove that it is highly probable that the claim is inherently anticipated.  Mere probabilities are not enough.  It is not required, however, that persons of ordinary skill actually recognized the inherent disclosure at the time the prior art was first known or used.  Thus, the prior use of the patented invention that was unrecognized and unappreciated can still be an invalidating anticipation.]

[NEWEGG'S PROPOSAL: *However, a limitation by limitation analysis is not required if the prior art is what TQP is accusing of infringement.  Put another way, Newegg's burden to prove that the asserted claims are invalid is met if you determine that the accused system is practicing the prior art or functions identically to the prior art.[33]* ]

---

[31] Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008).

[32] Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1369 (Fed. Cir. 2008).

[33] *See Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 ("[T]hat which infringes, if later, would anticipate, if earlier."); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) ("Although Wal-Mart and the manufacturers bore the burden of proving that the cartridges that were the subject of the pre-critical date sales anticipated the '331 patent, that burden was satisfied by Vanmoor's allegation that the accused cartridges infringe the '331 patent) (citing *Evans Cooling Sys. v. Gen. Motors Corp.*, 125 F. 3d 1448, 1451 (Fed. Cir. 1997); *Gammino v. Sw. Bell Tel., L.P.*, 512 F. Supp. 2d 626, 631-32 (N.D. Tex. 2007), *aff'd*, 267 Fed. Appx. 949 (Fed. Cir. 2008) (granting summary judgment that method claims were invalid based on prior art offers to sell services identical to those accused).

Newegg contends that claims 1, 6, 8 and 9 of the [Jones Patent / '730 Patent] are invalid because the claimed invention is anticipated or because TQP lost the right to obtain a patent. Newegg must convince you of this by clear and convincing evidence.

[Newegg's Proposal:  *Although an element by element comparison is generally required to determine whether prior art anticipates an asserted claim, in this case the preamble of asserted claim 1, that is, that the claimed method is "a method for transmitting data . . . over a communication link from a transmitter to a receiver," cannot be used to distinguish claim 1 from the RC4 prior art that is asserted by Newegg.*][34]

Here is a list of ways that Newegg can show that claims 1, 6, 8 and 9 of the [Jones Patent / '730 Patent] are invalid as anticipated because they were not new or novel:

(1) if the claimed invention was [TQP PROPOSAL: publicly] known to or used by others in the United States before the October 6, 1989. An invention is known when the information about it was reasonably accessible to the public on that date;

(2) if the claimed invention was already patented or described in a printed publication, anywhere in the world before the October 6, 1989.  A description is a "printed publication" only if it was publicly accessible;

(3) [*NEWEGG"S PROPOSAL: if the claimed invention was already patented or described in a printed publication, anywhere in the world, more than a year before October 6, 1989, which is the effective filing date of the application for the* [Jones Patent / '730 Patent]. *An invention was patented by another if the other patent describes the same invention claimed by TQP to a person having ordinary skill in the technology*];

(4) if the claimed invention was publicly used, sold, or offered for sale, in this country more than one year before October 6, 1989, which is the effective filing date of the application for the [Jones Patent / '730 Patent]; or

(5) if the claimed invention was already made [TQP'S PROPOSAL: and used]

---

[34] Dkt. No. 390.

[NEWEGG'S PROPOSAL: *or invented*] by someone else in the United States before October 6, 1989 who had not abandoned, suppressed or concealed the invention.]

## 6.1.1 Anticipation by Public Knowledge or Use by Another Prior to Invention[35]

A patent claim is also invalid if the invention recited in that claim was publicly known or used in the United States by someone other than the inventor before the patent applicant invented it, which here is October 6, 1989.

An invention was in public use if the claimed invention was accessible to the public or commercially exploited. Factors relevant to the determination of whether a use was public include the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public have access to the invention. [NEWEGG'S PROPOSAL: *Making the invention publicly known, however, requires only that the public enjoy the benefits or the use of the prior invention.[36] In determining whether the invention was publically used by someone other than the inventor, it is sufficient for Newegg to show that the public had access to the high level aspects of the invention.[37] The public need not have access to the inner workings of the prior art in order to be considered a public use for purposes of determining invalidity.[38]*]

In order to be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting either when it is reduced to

---

[35] Sources: 35 U.S.C. § 102; J. Davis Model Instructions, at 15
[36] *Friction Div. Products, Inc. v. E.I. DuPont de Nemours & Co., Inc.* 658 F. Supp. 998, 1014 (D. Del. 1987) (citing *Del Mar Eng. Labs v. United States*, 524 F.2d 1178, 1185 (Ct. Cl. 1975)).
[37] *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1570 (1997)
[38] *Id.*

practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention.  An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims; and (2) determined that it works for its intended purpose.  The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose. [39]

[Newegg's Proposal: *However, in this case you are instructed that RC4 was ready for patenting before October 6, 1988.*][40]

### 6.1.2  Anticipation by Sale or Offer for Sale More Than One Year Prior to the Application Filing Date[41]

[TQP's PROPOSED CHARGE: In addressing this specific category of prior art you must keep in mind the general instructions above concerning anticipation.  Because the [Jones Patent / '730 Patent] claims a method of transmitting encrypted data, a "sale" or "offer for sale" must require that each and every step of the method be performed for consideration.[42]  An agreement to license "know-how" or technology is not a "sale" of a claimed method if it does not require that each and every step of the method be performed, even if the agreement is entered into with

---

[39] AIPLA Model Jury Instructions at 20-21; 35 U.S.C. § 102(a), (b); Clock Spring, L.P. v. Wrapmaster, Inc., 560 F.3d 1317, 1325-27 (Fed. Cir. 2009); American Seating Co. v. USSC Group, Inc., 514 F.3d 1262, 1267 (Fed. Cir. 2008); Invitrogen Corp. v. Biocrest Manuf., L.P., 424 F.3d 1374, 1379-82 (Fed. Cir. 2005); SmithKline Beecham Corp. v. Apotex Corp., 365 F.3d 1306, 1316-20 (Fed. Cir. 2004); Netscape Commc'ns Corp. v. Konrad, 295 F.3d 1315, 1320-23 (Fed. Cir. 2002); Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 1998) (as to reduction to practice); Grain Processing Corp. v. Am. Maize-Prods. Co., 840 F.2d 902, 906 (Fed. Cir. 1988); Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1265-67 (Fed. Cir. 1986); Kinzenbaw v. Deere & Co., 741 F.2d 383, 390-91 (Fed. Cir. 1984); TP Lab., Inc. v. Prof'l Positioners, Inc., 724 F.2d 965, 970-72 (Fed. Cir. 1984); WL Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1549-50 (Fed. Cir. 1983); In re Smith, 714 F.2d 1127, 1134-37 (Fed. Cir. 1983).

[40] Dkt. No. 390.

[41] Adapted from Joint Proposed Jury Instructions, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Case No. 2:09-cv-00290 (W.D. Pa. 2012) (Dkt. 637); *Univ. of Pittsburgh v. Varian Med. Sys., Inc.* Case No. 1:08-cv-01307 (W.D. Pa. 2012) (Dkt. No. 486); *Asahi Glass Co., Ltd. v. Guardian Indus. Corp.*, No. 09-515-SLR (D. Del. 2011) (Dkt. No. 223). *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008); *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006).

[42] *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002) ("[A process claim] consists of acts, rather than a tangible item.  It consists of doing something, and therefore has to be carried out or performed." [¶] "A process is thus not sold in the same sense as a tangible item.  "know-how" describing what the process consists of and how the process should be carried out may be sold in the sense that the buyer acquires knowledge of the process and obtains the freedom to carry it out pursuant to the terms of the transaction. However, such a transaction is not a "sale" of the invention within the meaning of §102(b) because the process has not been carried out or performed as a result of the transaction.").

the expectation that some product may be made in the future based on the licensed "know how" or technology.[43]   Sales and offers for sales by third parties, who are not the inventor, do not qualify as "on-sale" bar prior art if made under conditions of secrecy or confidentiality.[44]

Newegg contends that the subject matter of the asserted claims of the [Jones Patent / *'730 Patent*] was on sale more than one year before the effective filing date of the [Jones Patent / *'730 Patent*].   Specifically, Newegg contends that the "License and Development Agreement" between RSA and Lotus Corporation was an offer for sale of the RC4 algorithm.   In order for this agreement to be considered under the patent laws as placing the claimed method—of transmitting encrypted data—"on sale," the following requirements must be met.

First, the claimed method of transmitting encrypted data must be the subject of a commercial offer for sale.[45]   In order for there to be a commercial offer for sale of this method, you must determine whether there was a communication that is sufficiently specific and definite to constitute an offer of the patented method.[46]   In general terms, an offer is one person manifesting willingness to enter into and be bound by a specific bargain.[47]   For a communication

---

[43] *In re Kollar*, 286 F.3d 1326, 1333-34 (Fed. Cir. 2002).

[44] *See W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.3d 1540, 1550 (Fed. Cir. 1983*)* (error to hold that activity with machine was invalidating public use" because it was done in secret and now public); *see also ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 866-867 (Fed. Cir. 2010) (noting that sales or offers for sale made by others and disclosing the claimed invention are "public use").

[45] *Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) ("The 'invention' which has been offered for sale must, of course, be something within the scope of the claim…. Hence, the first determination in the § 102(b) analysis must be whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention.").

[46] *Linear Tech. Corp. v. Micrel, Inc*., 275 F.3d 1040, 1050 (Fed. Cir. 2001) (noting communication required to the offeree) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981); accord Richard A. Lord, Williston on Contracts § 4:13, at 367 (4th ed.1990) (explaining that "in order for an offer to exist, it must constitute a manifestation communicated to the offeree so as to justify his understanding that by assenting a bargain will be concluded").  *Cf. Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1162 (Fed. Cir. 2006) ("A commercial offer is "one which the other party could make into a binding contract by simple acceptance (assuming consideration)").

[47]  Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"); quoted in *Linear Tech. Corp. v. Micrel, Inc*., 275 F.3d 1040, 1050 (Fed.

of the offer to be specific and definite enough to be a "commercial offer for sale," it must include all material terms to the agreement, such that another person could merely accept the offer as communicated and create a binding contract.[48]  Here, that means that the communication must be definite and specific enough such that upon acceptance, the party accepting the offer is legally bound to perform the patented method.[49]  Thus, you must determine whether before October 6, 1988, all limitations of the claimed method (i) were agreed to be carried out or performed, or were actually carried out or performed, by RSA under the License and Development Agreement; and (ii) were done so in exchange for consideration.[50]

Second, the method must have been ready for patenting before October 6, 1988.  Ready for patenting means that at the time of the alleged offer for sale, it was developed to the point where there was reason to expect that it would work for its intended purpose.

Newegg also contends that a "Software Development Agreement" between Lotus Corporation and Iris Associates, Inc. was a sale of technology that would make the [Jones Patent / '730 Patent] not valid.  As described above, Newegg must prove, by clear and convincing evidence, that the Agreement constituted a legal contract for sale, prior to October 6, 1988, of each and every method step of each asserted claim (1, 6, 8 and 9) of the [Jones Patent / '730 Patent] and that each method was "ready for patenting."

It is not sufficient for Newegg to merely offer evidence that Lotus or Iris performed a

---

Cir. 2001)).  *See also Linear Tech.*, 275 F.3d at 1050 (noting certain communications could not be considered offers "because they do not indicate LTC's to be bound, as required for a valid offer").

[48] *In re Kollar,* 286 F.3d at 1342  (citing Restatement (Second) of Contracts § 33(3) (1981)).

[49] *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1162 (Fed. Cir. 2006) ("A commercial offer is "one which the other party could make into a binding contract by simple acceptance (assuming consideration)." *Group One,* 254 F.3d at 1048. Under this standard, it is clear that the offeror must be legally bound to perform the patented method if the offer is accepted. *See Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1050 (Fed.Cir.2001) (stating that there was no offer where communication did not "indicate LTC's intent to be bound") (citing Restatement (Second) of Contracts § 26 (1981)).  *See generally Scaltech*, 178 F.3d at 1383 (reversible error for district court not to "address whether the process that was offered in the 30 March 1988 proposal to Chevron or the 15 November 1988 proposal to Champlin would necessarily have satisfied the claim limitations relating to small particle size and high solids concentration").

[50] *See Group One, Ltd. v. Hallmark Cards, Inc.,* 254 F.3d 1041, 1048 (Fed. Cir. 2001); Restatement (Second) of Contracts § 71 (1981).

method claimed in the [Jones Patent / '730 Patent] prior to October 6, 1988.  If you find that Newegg has not presented clear and convincing evidence that the subject of an offer for sale by Iris Associates, prior to October 6, 1988, meets each and every limitation of each asserted claim (1, 6, 8 and 9), then the inventions of the [Jones Patent / '730 Patent] were not put "on sale" by Iris Associates and no offer by Iris Associates would invalidate the [Jones Patent / '730 Patent].[51]

In order for a "sale" to occur, title of some good or service must pass from seller to buyer for a price.[52]  If ownership of technology does not move from Iris Associates to Lotus, then such technology was not subject of a sale or offer for sale by Iris Associates. If Lotus and Iris Associates both knew that Iris did not own or have a license to the RC4 algorithm, then the RC4 algorithm could not be subject to an offer for sale or sale by Iris to Lotus.[53]

Newegg may call witnesses to testify about what occurred prior to October 6, 1988.  The law requires you to only consider testimony by Newegg witnesses or witnesses testifying on behalf of Newegg, which relates to patent invalidity, if that testimony is corroborated in some way.  This means that some contemporaneous evidence, such as a document, must support what that witness says for you to consider that witnesses' testimony.[54]

[*NEWEGG'S PROPOSED CHARGE:*

*An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented.  An invention is ready for patenting when, it was actually built, or the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable one having ordinary skill in the art in the field of the invention to*

---

[51] "When the asserted basis of invalidity is a public use or on-sale bar, the court should determine 'whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." *Dana Corp. v. Am. Axle & Mfg.*, 279 F.3d 1372, 1375-1376, 2002 U.S. App. LEXIS 2245, 61 U.S.P.Q.2D (BNA) 1609 (Fed. Cir. 2002), *quoting Scaltech Inc. v. Retec/Tetra*, [1376] L.L.C., 178 F.3d 1378, 1383, 51 U.S.P.Q.2D (BNA) 1055, 1058 (Fed. Cir. 1999).
[52] *See*, UCC Section 2-106(1) (2001)("A 'sale' consists of passing of title from the seller to the buyer for a price.")
[53] *See*, Black's Law Dictionary (9th Edition); Definition of "sale": "The transfer of property or title for a price … The four elements are (1) parties competent to contract; (2) mutual assent; (3) a thing capable of being transferred, and (4) a price in money paid or promised."
[54] *Finnigan Corp. v. U.S. Int'l Tr. Com.*, 180 F.3d 1354, 1357 (Fed. Cir. 1999).

make and use the claimed invention, even if it was not yet reduced to practice. An invention is also ready for patenting if it has been reduced to practice.  An invention has been reduced to practice when it has been:

(1) constructed or performed within the scope of the patent claims; and

(2) determined that it works for its intended purpose.

Thus, if you determine that an invention or product was ready for patenting, you need only determine whether that product or invention was the subject of a commercial offer for sale or was actually sold prior to October 6, 1988 to qualify that invention or product as prior art. In this case, RC4, as delivered by RSA to Lotus and the National Security Agency, and asserted by Newegg to invalidate the asserted claims, was ready for patenting before October 6, 1988.[55] Thus, you need only determine whether Newegg has proved by clear and convincing evidence that RC4 was the subject of a commercial offer for sale or was actually sold in order to find the patent invalid as being anticipated by RC4.  A license to software constitutes a sale because a usable software product is provided.[56]  Similarly, a license to "know how" or technology can constitute a sale if software incorporating that "know how" or technology is also delivered to the licensee.[57]  Additionally, note that the sale of product before the critical date can anticipate method claims, as are asserted in the case, when the product, if used in its intended manner, would perform the claimed method.[58]  Moreover, the sale of product need not be public in order to qualify as an invalidating sale.[59]  The sale does not need to have generated profit or revenue,

---

[55] *TQP Development, LLC v. Merrill Lynch & Co., Inc., et al.*, Case No. 2:08-cv-00471, Dkt. 562 at 9-10 (E.D. Tex. July 18, 2012); Dkt. No. 390.

[56] *In re Kollar*, 286 F.3d 1326, 1321n.3 (Fed. Cir. 2002) *Minton v. National Ass'n of Securities Dealers, Inc.*, 336 F.3d 1373, 1377-79 (2003;

[57] *Id.*

[58] *See TQP Development, LLC v. Merrill Lynch & Co., Inc., et al.*, Case No. 2:08-cv-00471, Dkt. 562 at 4 (E.D. Tex. July 18, 2012) (citations omitted); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276 (2005) (citing *In re King*, 801 F2d 1324, 1326 (Fed. Cir. 1986)).

[59] *TQP Development, LLC v. Merrill Lynch & Co., Inc*, Case No. 2:08-cv-00471, Dkt. 562 at 10 (E.D. Tex. July 18, 2012) (citations omitted); *compare In re Caveney*, 761 F.2d 671, 675 (Fed.Cir.1985) (noting an exception to the general rule that a sale of the invention made by another before the critical date is invalidating where the sale encompasses an unpatented product made by a secret patented process) (citations omitted).

26

*or have even been an actual sale. A prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.]*

### 6.1.3 Anticipation by Prior Invention[60]

Newegg contends that various claims of the patents-in-suit are invalid because the inventions defined by those claims were invented by another person before the patentee invented his invention.

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress, or conceal the invention.

Newegg must show that it is highly probable either that before the patentee invented his invention, another person reduced to practice a method that included all of the elements of the relevant claims or that the other person was first to conceive the invention and that he exercised reasonable diligence in later reducing the invention to practice. In addition, Newegg must show that the other person's device was sufficiently developed that one skilled in the art would have recognized that it would work for its intended purpose.

If the prior invention was abandoned, suppressed, or concealed, it cannot invalidate the claims. An invention was abandoned, suppressed, or concealed if (1) the other person actively concealed the invention from the public or (2) the other person unreasonably delayed in making the invention publicly known. [TQP'S PROPOSAL: There are numerous ways to support an inference of abandonment, suppression, or concealment, such as the failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention.] Generally, an invention was not abandoned, suppressed, or concealed if the invention was made public, sold, or offered for sale,

---

[60] Sources: 35 U.S.C. § 102(a) and (g)(2); *T Teva Pharmaceutical v. Astrazeneca Pharmaceuticals*, 661 F.3d 1378, 1382-1383 (Fed. Cir. 2011); *Solvay S.A. v. Honeywell Intern. Inc.*, 622 F.3d 1367, 1376 (Fed. Cir. 2010); AIPLA Model Jury Instructions at 33-34; J. Davis Model Instructions, at 15-16.

or otherwise used for a commercial purpose.[61]  [NEWEGG'S PROPOSAL: *An invention is not abandoned suppressed or concealed if the prior inventor takes affirmative steps to make the invention publically known.[62]  In this regard, public use of the invention, without disclosing the details of it, is sufficient to negate any intention to abandon, suppress or conceal.[63]  Likewise, engaging in activities designed to bring about public or commercial use of the invention is also sufficient to negate any intention to abandon, suppress or conceal.[64]*]

      To show anticipation of the patented invention, Newegg must show by clear and convincing evidence that the prior invention disclosed all of the elements of each claim of the patent that Newegg contends is invalid [NEWEGG"S PROPOSAL: *, except that the preamble of claim 1 cannot be used to distinguish claim 1 from RC4*].[65]

**6.2 Obviousness**

      [*NEWEGG'S PROPOSAL: Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention also must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.  In other words, a patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of invention at the time the patent application was filed.*]

      Newegg contends that the asserted claims of the patent are invalid because the inventions were obvious. Newegg may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having

---

[61] AIPLA Model Jury Instructions at 33-34; 35 U.S.C. § 102(a), (g); Fox Group, Inc. v. Cree, Inc., 700 F.3d 1300, 1306 (Fed. Cir. 2012); Teva Pharmaceutical v. Astrazeneca Pharmaceuticals, 661 F.3d 1378 (Fed. Cir. 2011); Solvay S.A. v. Honeywell Intern. Inc., 622 F.3d 1367, 1376 (Fed. Cir. 2010); Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1381 (Fed. Cir. 2002); Dow Chemical Co. v. Astro-Valcour, Inc., 267 F.3d 1334, 1343 (Fed. Cir. 2001); Monsanto Co. v. Mycogen Plant Sci., Inc., 261 F.3d 1356, 1361-63 (Fed. Cir. 2001); Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1035-40 (Fed. Cir. 2001); E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1436-37 (Fed. Cir.1988); Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1444-46 (Fed. Cir. 1984).
[62] *Friction Div. Products, Inc. v. E.I. DuPont de Nemours & Co., Inc.* 658 F. Supp. 998, 1014 (D. Del. 1987) (citing *Del Mar Eng. Labs v. United States*, 524 F.2d 1178, 1185 (Ct. Cl. 1975).
[63] *Id.*
[64]  *Id.*
[65] Dkt. No. 390.

ordinary skill in the art at the time the application was filed.

[TQP'S PROPOSAL: A patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.]

In determining whether or not Newegg has established obviousness of a claim of the patents-in-suit by clear and convincing evidence you must consider the following:

1) the scope and content of the prior art;

2) the differences, if any, between each claim of the patent and that prior art;

3) the level of ordinary skill in the field of technology at the time the invention was made; and

4) any secondary considerations relating to obviousness or non-obviousness of the invention.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious. A claim does not need to be both anticipated and obvious in order to be invalid.

## 6.2.1 Scope and Content of the Prior Art[66]

[In determining whether or not the invention is valid, you must determine / *The first question you must answer in determining whether the invention was obvious is*] the scope and content of the prior art at the time the invention was made. You must decide whether the specific

---

[66] Sources: Court's Charge in *VirnetX*, at 20-21; Court's Charge in *i4i*, at 22-23.

references relied upon by Newegg in this case are prior art to the invention described in the Asserted Claims of the [Jones Patent / '730 Patent].

Prior art includes previous devices, articles and methods that were publicly used or offered for sale, and printed publications or patents that disclose the invention or elements of the invention. Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the invention was made.

[TQP'S PROPOSAL:

In order for a reference to be relevant, the reference must be within the field of the inventor's endeavor, or if it is from another field of endeavor, the reference must be reasonably related to the particular problem or issue the inventor faced or addressed when making the inventions described in the Asserted Claims of the [Jones Patent / '730 Patent].  A reference from a field of endeavor other than the inventors' is reasonably related to the problem or issues the inventors faced if the reference is one which, because of the matter with which the reference deals, logically would have commended itself to the attention of the inventors when considering the problems or issues they faced. It is for you to decide what the problems or issues were that the inventors faced at the time the inventions in the asserted claims were made.]

**6.2.2 Differences Over the Prior Art**

The next question you must answer in determining whether or not the invention was obvious at the time it was made is what differences there are, if any, between the prior art and the patented invention. In analyzing this issue, do not focus solely on the differences between the prior art and the invention because the test is not whether there are differences. Rather, the test is whether or not the invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those items. A claim is not obvious merely because all of the elements of

that claims already existed. In determining whether an invention is obvious, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known. One way to decide whether one of ordinary skill in the art would combine what is described in various items of prior art is whether there is some teaching, suggestion, or motivation in the prior art for a skilled person to make the combination covered by the patent claims. Motivation can be implicit or explicit.

In considering whether a claimed combination of prior art elements is obvious, you must consider whether the improvement is more than the predictable use of prior art elements according to their established functions. When a patent simply arranges old elements, with each performing the same function it had been known to perform, and yields no more than one would expect form such an arrangement, the combination is obvious.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim. Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings,

suggestions, and motivations may be found in the nature of the problem(s) solved by the claimed invention.

[*NEWEGG'S PROPOSAL: The fact that a combination was obvious to try may demonstrate that the combination itself was obvious. When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance, the fact that a combination was obvious to try might show that it was obvious.*]

## 6.2.3 Level of Ordinary Skill in the Field[67]

You have heard the term "a person of ordinary skill in the field or the art" a lot in this case. That term gets used frequently in patent law, and it is particularly important in deciding whether an invention would have been obvious at the time it was invented.

A person of ordinary skill in the art is a hypothetical person of average education and training in the particular field but who is aware of all of the relevant prior art. In deciding what the level of ordinary skill in the field is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventors and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.  The actual inventor's skill is irrelevant to this inquiry.

## 6.2.4 *Additional/Secondary* Considerations

[TQP's PROPOSAL:

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not

---

[67] Source: Court's Charge in *i4i*, at 25.

required to find obviousness if you find that, as of October 6, 1989, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account the following factors: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements in the claimed inventions; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combination of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

But you must be careful not to determine obviousness using hindsight.  Many true inventions can seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made.  You should not consider that is known today or what is learned from the teaching of the patent.

If, after consideration of all these factors, you find by clear and convincing evidence that the claim would have been obvious to a person of ordinary skill in the art at the time the invention was made, then you must find the claim invalid.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:]
[*Newegg's Proposed Charge:*

*In determining whether or not the invention was obvious at the time it was made, any applicable secondary considerations relating to the obviousness or non-obviousness of the invention must be considered. You must consider in your analysis any evidence that was*

33

*presented to you in this case regarding the presence or absence of the following factors in deciding whether or not the invention would have been obvious at the time it was made:*]

(1) Whether or not [*products incorporating*] the invention have achieved commercial success based on the merits of the claimed invention (rather than design needs or market pressure, advertising or similar activities);

(2) Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

(3) Whether or not there was a long felt [*but unresolved*] need [*in the field of technology that was satisfied by the invention*];

(4) Whether or not others had tried but failed to make the invention;

(5) Whether or not others copied the invention;

(6) Whether or not the invention achieved any unexpected results;

(7) Whether or not the invention was praised by others;

[TQP Proposal: (8) Whether others sought or obtained rights to the patent from the patent holder / *Newegg Proposal: (8) Whether or not others have taken licenses to use the invention based on the merits of the claimed invention*];

(9) Whether or not experts or those skilled in the field at the making of the invention expressed surprise or disbelief regarding the invention;

(10) Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventor made the invention.

[TQP Proposal: (11) Whether there were changes or related technologies or market needs contemporaneous with the invention;]

The presence or absence of any of the above factors may help you to decide whether or not the invention was obvious. [NEWEGG PROPOSAL: *However, such secondary considerations may or may not support an overall conclusion of nonobviousness in view of an*

*otherwise strong showing of obviousness in light of the prior art.*][68]

## 8. DAMAGES

I have now instructed you as to the law governing TQP's claims of patent infringement and Newegg's claims of invalidity.  If you determine that TQP has proved any of its patent infringement claims against Newegg and that the claims of the [Jones Patent / '730 Patent] that are infringed are not invalid, you must determine the amount of damages to which TQP is entitled.  You should not interpret the fact that I am giving you instructions about damages as any indication that TQP should win on its patent infringement claim.  It is your task first to decide whether Newegg are liable for the claims asserted against them; only if you find Newegg liable on one or more of the patent infringement claims will you need to turn to the question of damages.

The damages you award must be adequate to compensate TQP for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put TQP in approximately the same financial position that it would have been in had the infringement not occurred.

TQP has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that TQP establishes that it more likely suffered than not. The patent owner is not entitled to damages that are remote or speculative.  [*TQP's proof of damages must have a sound economic basis.*][69]

## 8.1  The Damages Period

Under the Patent Laws, TQP can not recover damages for any direct infringement that occurred more than six years prior to the date it filed this lawsuit, May 6, 2011 or after the

---

[68] *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007).
[69] TQP believes that this statement is inappropriate for a jury and more properly relates to the judge's role as gatekeeper.

expiration date of the patent, May 2, 2012.  Thus, the relevant time frame for calculating direct infringement damages from Newegg is May 6, 2005 to May 2, 2012.

If you find that Newegg is not liable for direct infringement, but is liable for active inducement of infringement, then the relevant damage period begins only after TQP gave "notice" of its patent rights by filing this lawsuit against Newegg, and once Newegg then developed the requisite intent to cause infringement of the patent.  Thus, the earliest date for damages resulting from inducement would be May 6, 2011, the date this lawsuit was filed, and no damages may be awarded for active inducement after the patent expired on May 2, 2012.  Thus, in considering damages for inducement of infringement, the relevant time period is no earlier than May 6, 2011 and no later than May 2, 2012.

**8.2  Reasonable Royalty Damages**

There are different types of damages that TQP may be entitled to recover. In this case, TQP seeks a reasonable royalty. A reasonable royalty is defined as the money amount TQP or the predecessor patent owner and Newegg would have agreed upon as a fee for use of the invention at the time prior to when infringement began. A reasonable royalty can be a single lump sum amount, or it can be a running royalty. A lump sum amount is a royalty payment where the patent owner receives a single, upfront payment. A running royalty is a royalty where the patent owner collects ongoing, per unit, or percentage payments over a period of time.

I will give more detailed instructions regarding damages shortly. Note, however, that if you find Newegg is liable for infringement, then TQP is entitled to recover no less than a reasonable royalty to compensate for the infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that

time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

In this case, the parties agree that the hypothetical negotiation for the licensing of the [Jones Patent / '730 Patent] would have taken place in January 2004 between Telequip, the original owner of the patent-in-suit, and Newegg. The parties disagree on whether the hypothetical negotiation for the [Jones Patent / '730 Patent] would have resulted in a lump sum or a running royalty.

[TQP'S PROPOSAL:

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:]

[NEWEGG'S PROPOSAL:

In deciding what is a reasonable royalty, you should consider the factors that Telequip and Newegg would consider in setting the amount Newegg should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty. [70]

(1) Any royalties received by TQP or its predecessors for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

---

[70] Sources: Court's Charge in *VirnetX*, at 25-27; Court's Charge in *i4i*, at 28-29; Final Jury Instructions in *Mass Engineered*, at 39-40; Court's Charge in *Orion*, at 28-29; Court's Charge in *Forgent*, at 24-25; Court's Charge in *z4 Techs.*, at 28-29; *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified and aff'd sub nom. *Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir.), *cert denied*, 404 U.S. 870 (1971); J. Davis Model Instructions, at 24-26.

[*Newegg's Proposal: (2) Any rates paid by Newegg for the use of other patents comparable to the patents-in-suit.*]

[*Newegg's Proposal: (3) The nature and scope of the license, as exclusive or nonexclusive; or as restricted or unrestricted in terms of territory, or with respect to the parties to whom the product may be sold.*]

[*Newegg's Proposal: (4) Whether or not TQP or any of its predecessors had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity.*]

[*Newegg's Proposal: (5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business.*]

[*Newegg's Proposal: (6) The effect of selling the patented inventions in promoting sales of other products or inventions of Newegg; the existing value of the inventions to TQP and its predecessors as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.*]

[*Newegg's Proposal: (7) The duration of the patent and the term of the hypothetical license.*]

[*Newegg's Proposal: (8) The established profitability of the inventions; their commercial success; and their current popularity.*]

(9) The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

(10) The nature of the patented inventions, the character of the commercial embodiment of the inventions as owned and produced by TQP and its predecessors, and the benefits to those who have used the inventions.

(11) The extent to which Newegg has made use of the patented inventions and any evidence that shows the value of that use.

38

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

[*Newegg's Proposal: (13) The portion of the profits that is due to the patented inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Newegg.*]

(14) Expert opinions as to what a reasonable royalty would be.

(15) The amount that a licensor such as Telequip and a licensee such as Newegg would have agreed upon if both parties had been reasonably and voluntarily trying to reach an agreement.

In determining a reasonable royalty, you may consider whether *Newegg* had commercially acceptable non-infringing alternatives that were available at the time at which *Newegg* and Telequip would have negotiated a license and whether that would have affected the reasonable royalty the parties would have agreed upon.

[TQP's Proposal:

Though TQP has the overall burden of proof on damages based on considerations of the factors above, *Newegg*– not TQP – has the burden to prove by a preponderance of the evidence that a commercially acceptable non-infringing alternative was available.[71]

It is not necessary for purposes of your consideration of the factors above to determine an amount of royalty that allows the infringer to make a profit.[72] Thus, the infringer may be liable for reasonable royalty damages even if those damages exceed the amount the infringer could have paid to avoid liability for infringement through implementing a non-infringing alternative.]

[*Newegg's Proposal:*

---

[71] *Clear With Computers, LLC v. Hyundai Motor America, Inc.*, Case No. 6:09-cv-00479, Dkt. No. 352 at *28 (E.D. Tex. June 17, 2011); Cf. Laser Dynamics, Inc. V. Quanta Computer, Inc, 2011 U.S. Dist. LEXIS 5422, *7-9 (E.D. Tex. Jan 20, 2011) (where availability throughout the period of infringement is not established, rebuttable presumption created that non-infringing alternative not available to the infringer).
[72] *Clear With Computers, LLC v. Hyundai Motor America, Inc.*, Case No. 6:09-cv-00479, Dkt. No. 352 at *28 (E.D. Tex. June 17, 2011).]

*A non-infringing alternative must be a product that does not infringe the patent because it is licensed under the patent or it does not include all the features required by the claims of the patent.*

*A non-infringing alternative is available if Newegg had all the necessary equipment, materials, know-how, and experience to implement the alternative and use the alternative instead of its allegedly infringing product at the time the allegedly infringing product was used. The alternative also must be acceptable to the specific purchasers and/or users of the allegedly infringing products.*

*The test is whether buyers of Newegg's product bought the infringing product because of the patented features. If so, non-infringing products without those patented features would not be "acceptable non-infringing substitutes," even if they could compete in the marketplace with the patented products.[73]*

*No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began. In addition, it is proper for you to consider any economic or business factors that normally prudent business people would, under similar circumstances, reasonably take into consideration in negotiating the hypothetical license. In determining the amount of damages, you must determine when the damages began. For claims 1, 6, 8, and 9 of the [Jones Patent / '730*

---

[73] American Seating Co. v. USSC Group, Inc., 514 F.3d 1262 (Fed. Cir. 2008); Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1372-73 (Fed. Cir. 2008); Riles v. Shell Exploration and Production Co., 298 F.3d 1302, 1312 (Fed. Cir. 2002); Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999); 2012 AIPLA Model Patent Jury Instructions.

Patent]*, damages commence on the date that Newegg first started to infringe that claim, but in no event earlier than May 6, 2005.*]

## 9. INSTRUCTIONS FOR DELIBERATIONS

When you retire to the jury room to deliberate on your verdict, you may take this charge with you. The first thing you should do is to select a Foreperson, who will be responsible for communicating with the Court and the Courtroom Deputy as needed.  You should then begin your deliberations.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Your verdict on each issue must be unanimous.  There will be a verdict form in the jury room waiting for you when you retire for deliberations.  When you have reached a unanimous verdict as to each question on the verdict form, the Foreperson is to fill in the answers on the verdict form. Make sure that you read the questions carefully, as some of them may not require answers depending on how you have answered other questions.  Do not reveal your answers to any of the questions until you are discharged.  Also, you should not reveal your numerical division on any issue during the course of your deliberations, even to me or to the Courtroom Deputy.

I expect that when you get into the jury room to begin deliberations you may feel a little overwhelmed.  This has been a complicated case and there is a lot of evidence and argument to

think about.  But I think you will be pleasantly surprised that as you start working methodically through the case, things will begin to seem more manageable.  I hope and expect you will listen to one another's views, even if you initially disagree on some things.  Discussing the issues from different perspectives can often help you formulate your ideas about how particular issues should be decided.

If you want to communicate with me at any time, please give a written message or question to the Courtroom Deputy, who will bring it to me.  You probably will not get a reply right away, as I will ordinarily have to summon the lawyers and get their input before responding to your questions. But if you do have a question that is hanging you up, you are entitled to ask.  I will tell you now, however, that once the case is submitted to you, we will not be able to take additional evidence or testimony, and in most instances we will just have to tell you to rely on your recollection of the evidence. I think you will find that in most instances, if you put your heads together, you will recall the evidence that you need to get you over the problem.  That is one of the reasons there is a group of you; eight memories are better than one.  And finally, trust your common sense throughout. As I have mentioned, the founding fathers of this country had great confidence in the sound common sense of an American jury. They had confidence in you to do your job diligently and well.  These parties have confidence in you.  And so do I.  You may now retire for your deliberations.